**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

JOHN E. JOHNSON, III; WILLIAM V.
LETEMPT; JEFFERY O. PIKE; DANIEL
GALLAGHER,
Defendants-Appellants.

No. 97-5023

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(CR-96-98)

Argued: September 25, 1998

Decided: October 28, 1998

Before WILKINSON, Chief Judge, MOTZ, Circuit Judge, and
BULLOCK, Chief United States District Judge for the Middle
District of North Carolina, sitting by designation.

_____

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Chief Judge Wilkinson and Chief Judge Bullock joined.

_____

**COUNSEL**

**ARGUED:** Eric Jason Foster, PITTS, HAY, HUGENSCHMIDT &
DEVEREUX, P.A., Asheville, North Carolina; Brian L. Michaels,
Eugene, Oregon, for Appellants. Kenneth Davis Bell, First Assistant

United States Attorney, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Sean P. Devereux, PITTS, HAY, HUGENSCHMIDT & DEVEREUX, P.A., Asheville, North Carolina, for Appellants. Mark T. Calloway, United States Attorney, Thomas R. Ascik, Assistant United States Attorney, Ellen Horstein, Office of the General Counsel, UNITED STATES DEPARTMENT OF AGRICULTURE, Asheville, North Carolina, for Appellee.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

This appeal involves a challenge to federal regulations that prohibit a noncommercial group of 75 or more persons from using the national forests without first obtaining a permit. Because the Government presented ample evidence to support convictions for violating these regulations and because application of the regulations here did not infringe upon First Amendment rights, we affirm.

I.

The Government charged John E. Johnson, III, William V. LeTempt, Jeffrey O. Pike, and Daniel Gallagher with violating 36 C.F.R. § 251.50 (1998), 36 C.F.R. § 261.51 (1998) and 36 C.F.R. § 261.10 (1998) which prohibit occupancy or use of any national forest system lands by groups of 75 or more persons without first obtaining a special use authorization permit from the National Forest Service. After a bench trial, the court convicted each defendant of this offense and sentenced each to pay a fine of $50 or perform eight hours of community service; the court stayed the sentences pending appeal.

These convictions arise from a gathering in June 1996 of the Rainbow Family in the Pisgah National Forest, located in Madison County, North Carolina. The Rainbow Family is a group that periodically gathers in natural surroundings, particularly to celebrate the solstices and equinoxes.

2

On June 14, 1996, when members of the Rainbow Family began gathering in the Puncheon Camp area of the Pisgah National Forest, Officer Walt Stribling informed Pike and LeTempt of the group's obligation to obtain a special use permit if the group grew to over 75 persons. On June 16, Officer Stribling, along with Deputy Sheriff Lamar Worley, returned to the forest and counted 66 people at the campfire circle and "in excess of 100 people" in the surrounding Puncheon Camp area. Officer Stribling then told Pike that it appeared that the 75 person threshold had been exceeded and if that was so, a permit was necessary.

On June 17, Stribling again returned to the park; Forest Officer Frank Roth accompanied him. They determined that, at a minimum, 79 members of the Rainbow Family group had gathered in the forest, including the four defendants. For an hour, the officers talked with the defendants regarding the need to apply for a permit and expressly told them that the number of group members counted was 79, and so a permit was required. The officers gave the defendants the opportunity to sign for and obtain a permit at that time but each defendant refused to do so. The officers then issued each defendant a notice of violation of the regulations.

In addition to the officers' trial testimony as to the June 17 meeting, a videotape of the conversation, which confirmed the officers' account, was admitted into evidence at trial. Moreover, each of the defendants testified at trial and confirmed this account in all critical respects.

Specifically, Gallagher testified that he knew about the 75-person rule well prior to the June gathering, that the officers had explained it again on June 17, and that he "estimated" that there were "maybe 50, maybe 60" Rainbow Family members present on June 17, but that he did not count them. Johnson admitted that he too had not counted the Family members, but that he had heard the officers state that they had counted more than 75 people; he also acknowledged that he had participated in other gatherings in which a permit was necessary. LeTempt volunteered that he was "very familiar" with the 75-person rule and that he had thought at the start of the gathering that attendance could exceed 75. He recalled that, although he had not performed a count of his own, he had disputed Officer Roth's statement

3

that more than 75 people were present. LeTempt acknowledged that shortly after Officer Roth informed him of the results of his count, he offered to reduce the numbers in the group by morning. Pike testified that he thought there were about "50 people or so" but that he too did not count the members in attendance. None of the defendants denied that on June 17 the officers notified them that a permit was necessary because the 75 person limit had been exceeded and that the officers gave them an opportunity to apply for and obtain the required permit, an opportunity that they rejected.

After a bench trial, a magistrate judge convicted the defendants of failing to obtain the necessary special use permit. The judge specifically noted that none of the defendants disputed the agents' account, reflected in the tape, that the agents had told the defendants that the 75-person limit had been exceeded, that a permit was necessary, and that they could apply for one that night. The defendants appealed their convictions to the district court, which upheld the magistrate judge's decision. See United States v. Johnson, 988 F. Supp. 920 (W.D.N.C. 1997).

On appeal to this court, the defendants maintain that we must reverse their convictions because the regulations require the Government to prove not only that 75 or more persons were in attendance, but that each of the defendants knew the group was this large. Alternatively, the defendants argue that application of the regulations to them violated their First Amendment free speech and free association rights. We consider each claim in turn.

II.

The federal regulations at issue here, promulgated pursuant to 16 U.S.C. § 551 (1998), prohibit any "use or occupancy of National Forest System land or facilities without special-use authorization when such authorization is required." 36 C.F.R. § 261.10(k). The regulations provide that such "special use authorization" must be obtained for "noncommercial group uses," id.§ 251.50, and defines "group use" as "an activity conducted on National Forest System Lands that involves a group of 75 or more people, either as participants or spectators." Id. § 251.51.

4

Thus proof of a violation of these regulations requires the Government to demonstrate: (1) use, (2) of National Forest land, (3) by a non-commercial group of 75 or more persons, either as participants or spectators, (4) without special use authorization. The defendants claim that, in addition, the Government must demonstrate that they knowingly violated these regulations, i.e. in this case that each defendant knew that 75 or more persons were present in the forest at the time the officers issued notices that they had violated the regulations.

The regulations, as well as the legislative history, see 60 Fed. Reg. 45258 (1995), are "silent concerning the mens rea required for a violation." Staples v. United States, 511 U.S. 600, 605 (1994). Accordingly, to resolve the necessity of a mens rea requirement would require us to engage in a somewhat complicated inquiry. See United States v. X-Citement Video, 513 U.S. 64 (1994); United States v. Cook, 76 F.3d 596 (4th Cir. 1996). However, the facts of this case eliminate the need for us to engage in that analysis here.

Even if the Government must prove beyond a reasonable doubt that each defendant knowingly violated the regulations, in the case at hand the Government unquestionably met this burden. Indeed, after hearing extensive evidence, which we have briefly outlined above, the magistrate judge found that each defendant had "knowledge about the law" and knowledge "that there could reach a critical number, which could bring into bearing the permit process and then the opportunity of each defendant to avoid the problem by signing the permit or having somebody else sign the permit." Those findings are amply supported by the record. The Government offered abundant, uncontroverted evidence that the officers expressly informed the defendants that more than 75 members of their group were gathered in the national forest on June 17, that the defendants concededly heard and understood this message, and that the defendants offered the officers nothing to refute the count -- not even their own count of Rainbow Family members. Therefore, the trial judge did not err.

III.

Alternatively, the defendants maintain that the Government's application of the regulations to them violated their First Amendment free speech and free association rights. They assert that the regulations

5

should be deemed unconstitutional because they "burden[ ] substantially more expression than necessary to further the government's legitimate interests." Brief of Appellants at 14.

Neither party disputes that Rainbow Family gatherings constitute expressive conduct. See United States v. The Rainbow Family, 695 F. Supp. 294, 308 (E.D. Tex. 1988). Further, the parties agree that when expressive conduct occurs on public grounds, like a national forest, the Government can impose reasonable "time, place, and manner" restrictions. See Ward v. Rock Against Racism , 491 U.S. 781, 789 (1989). The parties also agree that such restrictions are constitutionally valid as long as they (1) are content-neutral, (2) "narrowly tailored to serve a significant governmental interest" and (3) "leave open ample alternative channels for communication of the information." Id. at 791. Finally, the defendants do not contend that the regulations fail to achieve content neutrality or to leave open ample alternative channels of communication.

The defendants' single contention is that the regulations are not narrowly tailored to satisfy any legitimate government interest. They assert that a governmental interest in reducing the actual or potential damage to national forest system lands that may occur as a consequence of having large groups use these lands does not justify the regulations. More specifically, the defendants argue that because obtaining a signature on a permit application does not render the signatory financially liable for group damage to the lands, the regulations do not lead to any actual repair of damaged property. The defendants maintain that if the Government were truly interested in reducing such damage, it would make every person in the group sign the application.

Because the defendants posit too limited a view of the interests served by the regulations, their arguments miss the mark. The regulations, as well as the Department of Agriculture's comments accompanying them, make clear that the regulations serve three purposes. They are designed to (1) "protect resources and improvements on National Forest System lands," (2) "allocate space among potential or existing uses and activities," and (3) "address concerns of public health and safety." 60 Fed. Reg. 45,258, 45,262 (1995).

6

The permit requirement serves these three goals in a narrowly tailored manner by providing a minimally intrusive system to notify Forest Service personnel of any large groups that will be using the forest so that the personnel, through advance preparation, can minimize any damage that may occur. See, e.g., 36 C.F.R.§§ 251.54(h)(1)(i-vi) and (h)(2)(1998); 60 Fed. Reg. 45,258, 45,260, 45,262, 45,266, 45,272-45,273, 45,279-45,280. Indeed, the defendants have pointed to no evidence suggesting that the permit system does not properly and narrowly serve these significant governmental interests. Thus, we must reject the defendants' assertions that application of the regulations to them violated their First Amendment rights.

IV.

Members of the Rainbow Family, like all other citizens of this country, are entitled to the fair administration of justice and to the enjoyment of their Constitutional rights, including the precious rights of free speech and free association. But, like other citizens, they must comply with lawful government directives. In this case, they willfully violated neutral government regulations narrowly tailored to protect the national forest system lands for use by all. Accordingly, their convictions for violating the special use regulations are

AFFIRMED.

7