**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

TIMOTHY COX,
>                    *Plaintiff-Appellant,*

>            and

CATHY RIDER,
>                               *Plaintiff,*

>                    v.

CITY OF CHARLESTON, SOUTH
CAROLINA; RUEBEN GREENBERG,
Individually and in his official
capacity as Chief of Police for the
City of Charleston; JOSEPH RILEY,
JR., Individually and in his official
capacity as Mayor of the City of
Charleston; CAPTAIN CHIN,
Individually and in his official
capacity as an officer of the
Charleston Police Department;
OFFICER DAVIS, Individually and in
his official capacity as an officer of
the Charleston Police Department;
CITY OF TRAVELERS REST, South
Carolina; MANN BATSON,
Individually and in his official
capacity as Mayor of the City of
Travelers Rest; TIMOTHY CHRISTY,
Individually and in his official
capacity as Chief of Police for the
City of Travelers Rest,
>                    *Defendants-Appellees.*

No. 03-1782

TIMOTHY COX,

*Plaintiff-Appellee,*

and

CATHY RIDER,

*Plaintiff,*

v.

CITY OF TRAVELERS REST, South
Carolina; MANN BATSON,
Individually and in his official
capacity as Mayor of the City of
Travelers Rest; TIMOTHY CHRISTY,
Individually and in his official
capacity as Chief of Police for the
City of Travelers Rest,

*Defendants-Appellants,*

and

CITY OF CHARLESTON, SOUTH
CAROLINA; RUEBEN GREENBERG,
Individually and in his official
capacity as Chief of Police for the
City of Charleston; JOSEPH RILEY,
JR., Individually and in his official
capacity as Mayor of the City of
Charleston; CAPTAIN CHIN,
Individually and in his official
capacity as an officer of the
Charleston Police Department;
OFFICER DAVIS, Individually and in
his official capacity as an officer of
the Charleston Police Department,

*Defendants.*

No. 03-1880

Appeals from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(CA-01-3807-18-AJ-2)

Argued: May 25, 2005

Decided: July 26, 2005

Before WILKINS, Chief Judge, and TRAXLER and
KING, Circuit Judges.

_____

Affirmed by published opinion. Chief Judge Wilkins wrote the opinion, in which Judge Traxler and Judge King joined.

_____

**COUNSEL**

**ARGUED:** Samuel Thurston Towell, Third Year Law Student, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Appellate Litigation Clinic, Charlottesville, Virginia, for Appellant/Cross-Appellee. Robin Lilley Jackson, STUCKEY LAW OFFICES, P.A., Charleston, South Carolina; Charles Franklin Turner, Jr., CLARKSON, WALSH, RHENEY & TURNER, P.A., Greenville, South Carolina, for Appellees/Cross-Appellants. **ON BRIEF:** Neal L. Walters, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Appellate Litigation Clinic, Charlottesville, Virginia, for Appellant/Cross-Appellee. Letitia H. Verdin, CLARKSON, WALSH, RHENEY & TURNER, P.A., Greenville, South Carolina, for Appellees/Cross-Appellants City of Travelers Rest, South Carolina, Timothy Christy, Individually and in his official capacity as Chief of Police for the City of Travelers Rest, and Mann Batson, Individually and in his official capacity as Mayor of the City of Travelers Rest; James A. Stuckey, Charleston, South Carolina, for Appellees/Cross-Appellants City of Charleston, South Carolina, Rueben Greenberg, Individually and in his official capacity as Chief of Police for the City of Charleston, Joseph Riley, Jr., Individually and in his official capacity as Mayor of the City of Charles-

ton, Captain Chin, Individually and in his official capacity as an officer of the Charleston Police Department, and Officer Davis, Individually and in his official capacity as an officer of the Charleston Police Department.

## OPINION

WILKINS, Chief Judge:

The City of Travelers Rest, South Carolina (the City), has a significant interest in ensuring that its streets and sidewalks remain safe, orderly, and accessible. *See Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 768 (1994). This case concerns whether a local parade ordinance, enacted by the City to effectuate that significant interest, is consistent with the First Amendment. The City appeals a decision of the district court striking down two sections of the ordinance as facially unconstitutional. Timothy Cox appeals a decision of the district court dismissing his as-applied challenge to the ordinance and rejecting his claim for damages. For the reasons set forth below, we affirm.

### I.  *Facial Challenge*

Cox is a citizen of South Carolina who frequently engages in protests throughout the state. In June 2001, he and approximately 15 like-minded individuals were standing on a public sidewalk in the City, holding signs, praying, sharing their religious beliefs, and handing out pamphlets that advocated alternatives to abortion. Though never arrested, the demonstrators were informed by Travelers Rest police officers that they were in violation of Travelers Rest Ordinance ch. 7.16 (the Ordinance), which provides that "[i]t is unlawful for any person to organize, hold or participate in any parade, meeting, exhibition, assembly or procession of persons and/or vehicles on the streets or sidewalks of the city, unless such activity shall have first been authorized by a written permit." Travelers Rest, S.C., Ordinance § 7.16.020.[1] Cox filed this action challenging the Ordinance as

---

[1]The Ordinance is reproduced in its entirety in an appendix to this opinion.

facially unconstitutional under the First Amendment. *See* U.S. Const. amend. I. The district court ruled that the Ordinance violated the First Amendment "to the extent that [it] require[d] small gatherings, including sole protestors, to obtain a permit before protesting in a public forum," J.A. 483,[2] and to the extent that it prohibited issuing permits for Ordinance-identified activities that would occur between 8:00 a.m. and 1:00 p.m. on Sundays, *see* Ordinance § 7.16.090. We agree with the district court that both of these sections of the Ordinance violate the First Amendment.

An ordinance that requires individuals or groups to obtain a permit before engaging in protected speech is a prior restraint on speech. *See Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150-51 (1969). Although a city may be "justified in setting forth regulations and ordinances requiring advance parade permits as a traditional exercise of control by the local government," *Reyes v. City of Lynchburg*, 300 F.3d 449, 454 (4th Cir. 2002), "any permit scheme controlling the time, place, and manner of speech must not be based on the content of the message, must be narrowly tailored to serve a significant governmental interest, and must leave open ample alternatives for communication," *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992). To be narrowly tailored, an ordinance "need not be the least restrictive or least intrusive means of" effectuating the relevant interests, *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989), but it may not "burden substantially more speech than is necessary to further the government's legitimate interests," *id.* at 799. As a prior restraint, the Ordinance is laden with "a heavy presumption against its constitutional validity," *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963), and the City bears the burden of proving its constitutionality, *see New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam).

The district court ruled, and neither party questions on appeal, that the Ordinance is not content-based and that it leaves open ample alternatives for communication. Thus, the only issue before us is whether the district court correctly decided that the Ordinance is not narrowly

---

[2]For the same reason, the district court ruled facially unconstitutional a similar statute in Charleston, South Carolina, that Cox had also challenged. The City of Charleston is not a party to this appeal.

tailored to the extent that it applies to small gatherings of individuals and to the extent that it absolutely prohibits the Ordinance-identified activities on Sunday mornings.

### A.  *Lack of Small-Gathering Exception*

This circuit has not yet decided whether a permit requirement that does not contain an exception for small gatherings can nevertheless be narrowly tailored to effectuate a city's legitimate interest in maintaining the safety, order, and accessibility of its streets and sidewalks. In *United States v. Johnson*, 159 F.3d 892 (4th Cir. 1998), however, we upheld a permit requirement that applied to groups of 75 or more seeking access to, and use of, National Forest System land. *See Johnson*, 159 F.3d at 895-96. There, the Department of Agriculture argued that its permit requirement was necessary for three purposes: "to (1) protect resources and improvements on National Forest System lands, (2) allocate space among potential or existing uses and activities, and (3) address concerns of public health and safety." *Id.* at 895 (internal quotation marks omitted). We ruled that "[t]he permit requirement serves these three goals in a narrowly tailored manner by providing a minimally intrusive system to notify Forest Service personnel *of any large groups* that will be using the forest." *Id.* at 896 (emphasis added).

Unlike the permit requirement at issue in *Johnson*, the Ordinance is not limited to large groups. The City concedes that the Ordinance applies to gatherings of only a few people and that on at least one occasion a group of only three applied for a permit. However, the City disputes the conclusion of the district court that the Ordinance applies even to only one individual protester. The City argues that the Ordinance can only be reasonably read to apply to expression by more than one person, emphasizing that the Ordinance prohibits only a "parade, meeting, exhibition, assembly or procession of *persons* and/or *vehicles* . . . ." Ordinance § 7.16.020 (emphasis added).[3]

---

[3]Without deciding the issue, we find support for the district court interpretation of the Ordinance as applying not only to gatherings involving multiple persons but also to single-person activities. The plural terms "persons" and "vehicles" are more naturally read to modify only "proces-

We need not choose between these competing interpretations, for even if we accept the City's interpretation, we nevertheless believe that the unflinching application of the Ordinance to groups as small as two or three renders it constitutionally infirm. It is worth noting, first, that the Ordinance applies to political speech, which "is at the core of the First Amendment," *Shapero v. Ky. Bar Ass'n*, 486 U.S. 466, 483 (1988). The burdens placed on such treasured expression by the Ordinance are substantial. "Both the procedural hurdle of filling out and submitting a written application, and the temporal hurdle of waiting for the permit to be granted may discourage potential speakers." *Grossman v. City of Portland*, 33 F.3d 1200, 1206 (9th Cir. 1994). And, "because of the delay caused by complying with the permitting procedures, immediate speech can no longer respond to immediate issues." *Id.* (alteration & internal quotation marks omitted).

The City argues that the Ordinance need not contain a small-gathering exception because "[s]afety issues remain whether the parade or protest is large or small." Appellees/Cross-Appellant's Joint Answering & Opening Br. (City Br.) at 22. "Some small but particularly inflammatory protests may be a greater security concern than even much larger ones," the City argues, and "[s]mall towns with limited resources" need advance warning of even small protests to adequately police the events. *Id.* at 22-23. But, the City fails to explain how a small demonstration that may become inflammatory would tax its police force any differently than, for example, a street fight between two individuals, so as to justify requiring advance warning of all small demonstrations. While it may be true that the permit requirement succeeds in mitigating the potential of any of the activities listed in the Ordinance to threaten the safety, order, and accessibility of city streets and sidewalks, "it does so at too high a cost, namely, by significantly restricting a substantial quantity of speech that does not impede [the City's] permissible goals." *Cmty. for Creative Non-Violence v. Turner*, 893 F.2d 1387, 1392 (D.C. Cir. 1990).

---

sion" in the series of examples set forth in the Ordinance; to read the Ordinance otherwise would lead to awkward and unreasonable results. For example, if the plural terms "persons" and "vehicles" were read to modify the entire series of examples—rather than modifying only "procession"—the Ordinance would contemplate a "meeting" of "vehicles," which is an unlikely if not impossible occurrence.

A few simple examples illustrate the overbreadth of the Ordinance. Consider three friends who are walking along the sidewalk in downtown Travelers Rest. They come upon a newspaper stand displaying a headline that outrages them. So moved by the headline, they walk to the end of the street and hold up handmade signs protesting the headline. Even if their expression does nothing to disturb the peace, block the sidewalk, or interfere with traffic, the Ordinance renders it criminal. *See Grossman*, 33 F.3d at 1206 ("Spontaneous expression, which is often the most effective kind of expression, is prohibited by the [O]rdinance."). Only had they first visited the city administrator (assuming his office was open at the time), filed the appropriate permit application, and obtained a permit would the threesome have been permitted under the Ordinance to engage in the protest. Similarly, the Ordinance criminalizes a small meeting of individuals who gather on the sidewalk in Travelers Rest to hand out religious tracts without first obtaining a permit, even if their expression does nothing to disturb or disrupt the flow of sidewalk traffic. Indeed, any group of individuals who gather together on the sidewalks for a "meeting" or "assembly"—no matter how innocuous—is in violation of the Ordinance unless the group first obtains a permit from the city administrator. Because the City has not established why burdening such expression is necessary to facilitate its interest in keeping its streets and sidewalks safe, orderly, and accessible, we hold that the Ordinance "burden[s] substantially more speech than is necessary to further the government's legitimate interests," *Ward*, 491 U.S. at 799, and therefore facially violates the First Amendment. *Accord Grossman*, 33 F.3d at 1205-08 (permit requirement not narrowly tailored when it applied to groups as small as "six to eight"); *Turner*, 893 F.2d at 1392 (permit requirement not narrowly tailored when it applied to groups as small as two); *see also Douglas v. Brownell*, 88 F.3d 1511, 1524 (8th Cir. 1996) (expressing doubt that permit requirement was narrowly tailored when it applied to groups as small as ten).

Although we affirm the decision of the district court that the Ordinance is facially unconstitutional to the extent that it applies to small groups, we decline Cox's invitation to announce a numerical floor below which a permit requirement cannot apply. The relevant legislative body (the city council here) is the proper forum for balancing the multitude of factors to be considered in determining how to keep the streets and sidewalks of a city safe, orderly, and accessible in a man-

ner consistent with the First Amendment. We emphasize, however, that cities have a number of tools at their disposal to meet that goal. Rather than enforcing a prior restraint on protected expression, cities can enforce ordinances prohibiting and punishing conduct that disturbs the peace, blocks the sidewalks, or impedes the flow of traffic. *See, e.g.*, *Cox v. New Hampshire*, 312 U.S. 569, 574 (1941) ("One would not be justified in ignoring the familiar red traffic light because he thought it his religious duty to disobey the municipal command or sought by that means to direct public attention to an announcement of his opinions."); *see also Cox v. Louisiana*, 379 U.S. 559, 574 (1965) ("Nothing we have said here . . . is to be interpreted as sanctioning riotous conduct in any form or demonstrations, however peaceful their conduct or commendable their motives, which conflict with properly drawn statutes and ordinances designed to . . . regulate traffic . . . ."). Cities can also pass ordinances that "regulate only the volume, location, or duration of [protected] expression," rather than subjecting all speech to a permit requirement. *Turner*, 893 F.2d at 1393. And, if the legislative body determines that a permit requirement is absolutely necessary to effectuate the relevant goals, it should tailor that requirement to ensure that it does not burden small gatherings posing no threat to the safety, order, and accessibility of streets and sidewalks. Or, it could require a permit "only when [c]ity services are required because the event interferes with normal vehicular or pedestrian traffic," thereby "link[ing] the permit requirement to its practical justification." *Grossman*, 33 F.3d at 1207 (internal quotation marks omitted). At bottom, the legislative body can enact a permit requirement that burdens expression only to the extent necessary to effectuate the city's significant interests, and no more so.

### B.  *Prohibition on Sunday Morning Permits*

The district court also ruled that the Ordinance was not narrowly tailored to the extent that it prohibited issuing permits for activities that would occur between 8:00 a.m. and 1:00 p.m. on Sundays. *See* Ordinance § 7.16.090. "[The City] has not explained how its absolute ban on Sunday morning parades serves its stated purposes of safety and preserving order in the community," the court emphasized. J.A. 485.

The City argues that § 7.16.090 is narrowly tailored because "requiring additional officers to be on patrol for a Sunday morning

parade or protest would likely stretch an already small department." City Br. at 25. But the City offers no explanation in its brief as to why it failed to establish this in the district court. Only during oral argument did the City suggest that it had been unaware that Cox was challenging § 7.16.090 specifically, and therefore it did not attempt to defend this section in the district court.

We acknowledge that the pleadings filed in the district court by Cox—who was then proceeding *pro se*[4]—were at times difficult to interpret. However, we believe for several reasons that it was clear from Cox's complaint that he was challenging the entire Ordinance, including § 7.16.090. First, Cox's complaint stated in the first paragraph that he was challenging "the facial constitutionality of . . . Sections 7.16.010 through 7.16.090 of the Code of Ordinances for the City." J.A. 13. And, in paragraphs 47, 48, 49, and 50 of his complaint, Cox specifically alleged that § 7.16.090 is unconstitutional on its face. Second, the entire Ordinance consists of only nine paragraphs, making it fairly straightforward to determine and defend the provisions Cox was challenging. Finally, both the magistrate judge to whom the case was referred and the district court were able to determine, based on Cox's pleadings, that he was challenging § 7.16.090. Because the City failed to meet its burden in the district court of demonstrating justification for that provision, we are compelled to affirm the decision holding it unconstitutional.

## II.   *As-Applied Challenge*

Cox also claims that the Ordinance was unconstitutional as it was applied against him during the protest in June 2001. The magistrate judge concluded that Cox had "no standing to maintain an 'as applied' constitutional challenge to the instant ordinance[ ]" because he had neither been denied a permit nor arrested for demonstrating without one. *Id.* at 370. The district court affirmed this conclusion on the ground that Cox had failed to object to it. The court explained that Cox had repeatedly asserted in his objections to the magistrate's report that the only issue before the district court was his facial challenge to the Ordinance.

---

[4]Cox has since been appointed counsel.

Cox argues that his objections to the report must be liberally construed because he was proceeding *pro se* at the time. *See Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Even affording Cox the leeway he deserved as a *pro se* plaintiff, however, we agree with the district court that Cox did not adequately object to the magistrate judge's conclusion that he lacked standing to bring an as-applied challenge to the Ordinance. Near the beginning of Cox's objections to the report, he emphasized that his "request for Partial Summary Judgment is based **only** on the language of the [Ordinance]: not the events of June . . . 2001." J.A. 399. Cox then focused almost the entirety of his written objections on the magistrate judge's rejection of his facial challenge. While one or two sentences in Cox's objections may be tortuously construed to pertain to the as-applied claim, we cannot say that the district court erred in concluding that Cox failed to object to the magistrate's conclusion regarding that claim. *Cf. Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("While pro se complaints may represent the work of an untutored hand requiring special judicial solicitude, a district court is not required to recognize obscure or extravagant claims defying the most concerted efforts to unravel them." (internal quotation marks omitted)).[5]

## III.

For the reasons stated above, we affirm the decision of the district court striking down two sections of the Ordinance as facially unconstitutional and affirm the dismissal of Cox's as-applied claim.

*AFFIRMED*

---

[5]Because the district court dismissed Cox's as-applied challenge, the court also rejected Cox's claim for damages arising out of any constitutional violation that he suffered. As we affirm the decision of the district court dismissing Cox's as-applied claim, we also affirm its decision rejecting Cox's claim for damages

APPENDIX

**Chapter 7.16**

**ASSEMBLIES, PARADES,
PROCESSIONS AND EXHIBITIONS**

**Sections:**
  **7.16.010   Enforcement.**
  **7.16.020   Permit required.**
  **7.16.030   Application for permit.**
  **7.16.040   Contents of permit.**
  **7.16.050   Matters considered in determining
              issuance of permit.**
  **7.16.060   Issuance.**
  **7.16.070   Deviation from permit.**
  **7.16.080   Display of permit.**
  **7.16.090   Restrictions on hours.**

**7.16.010   Enforcement.**

Nothing contained in this chapter shall prohibit the authority of any officer to arrest a person engaged in any act or activity granted a permit under this chapter, if the conduct of such person violates the laws of the state, provisions of this code or other ordinances of the city, or unreasonably obstructs the public streets and sidewalks of the city, or engages in acts that cause a breach of the peace. (Prior code § 7-4-1)

**7.16.020   Permit required.**

It is unlawful for any person to organize, hold or participate in any parade, meeting, exhibition, assembly or procession of persons and/or vehicles on the streets or sidewalks of the city, unless such activity shall have first been authorized by a written permit. (Prior code § 7-4-2)

**7.16.030   Application for permit.**

Any person desiring a permit required by the provisions of this chapter shall make application therefore to the city administrator, not less than seventy-two hours in advance of the time and date of the intended assembly, parade, procession or exhibition. The application shall contain the following information:

(1) The name and address of the applicant;

(2) The name and address of the person the applicant represents;

(3) The exact time and date of commencement and termination of each act or activity desired;

(4) The purpose, location and route of such act or activity, if applicable;

(5) The person, group, association or body to be authorized under the permit to do such act or activity and the number of persons to participate; and

(6) Such other relevant information as the city administrator may require for the investigation of the applicant. (Ord. O-28-92 § 2, 1992)

**7.16.040   Contents of permit.**

The permit shall contain all information contained in the application and shall be signed by the city administrator. A signed copy of the permit shall be kept with the application, both on file in the office of the city administrator. (Prior code § 7-4-4)

**7.16.050   Matters considered in
             determining issuance of
             permit.**

In deciding whether to issue a permit under the provisions of this chapter, the city administrator shall consider:

(1) The number of persons to participate;

(2) The anticipated traffic conditions at the time and date proposed for the activity;

(3) The schedule of other similar activities for which permits may have been issued;

(4) The adequacy of adult supervision for any minor scheduled to participate;

(5) The availability of city personnel whose presence on duty may be required by the activity and by the necessity to protect the general public; and

(6) The adequacy of public facilities in the location proposed for the activity to accommodate the proposed activity and the normal public use of public facilities in the proposed location. (Prior code § 7-4-5)

### 7.16.060    Issuance.

The permit required by the provisions of this chapter shall be issued by the city administrator within forty-eight hours of his receipt of a completed application; provided, however, such permit may be denied or refused, if it shall appear that the act or activity requested by such application shall be violative of any applicable provision of this code, state law, or other provision of law. (Ord. O-28-92 § 3, 1992)

### 7.16.070    Deviation from permit.

It is unlawful for any person participating in any act or activity for which a permit has been granted under the provisions of this chapter to deviate from or alter any of the terms or contents of such permit. (Prior code § 7-4-7)

### 7.16.080    Display of permit.

Every person having a permit issued under the provisions of this chapter shall have such permit in his possession during the activity permitted thereby and shall display such permit upon the request of any public safety officer. Failure to display such permit shall be deemed a misdemeanor. (Prior code § 7-4-8)

**7.16.090   Restrictions on hours.**

No parade, meeting, exhibition assembly or procession of person and/or vehicles on streets or sidewalks of the city shall be permitted except between the hours of eight a.m. and eight p.m., Monday through Saturday, and between the hours of one p.m. and eight p.m. on Sunday. (Ord. O-28-92 § 4, 1992)