W. EUGENE DAVIS, Circuit Judge:
The appellant Jeremy Sonnier challenges the denial of a preliminary injunction seeking to enjoin enforcement of the speech policy regulating the time, place and manner, and other matters relating to speech by non-students on the campus of Southeastern Louisiana University (“SLU”). Reviewing the district court’s denial of a facial challenge to the regulation, for the following reasons, we AFFIRM in part and REVERSE in part.
I. FACTS
The appellant Sonnier and four other individuals not associated with SLU, entered the SLU campus on November 19, 2007 to express a religious message to students. Prior to his arrival, Sonnier did not seek a permit to speak as required by the SLU speech policy. Defendant Thomas Carmichael, an SLU police officer, asked Sonnier and the others to stop speaking until they obtained permission to continue. Sonnier went to the office of Defendant Jim McHodgkins, the Assistant Vice President of Student Affairs. McHodgkins informed Sonnier that, pursuant to the SLU speech policy, a permit request must be filed seven days before engaging in a public assembly or demonstration on campus. Because Sonnier had not sought a permit seven days earlier, McHodgkins told Sonnier he would be unable to obtain permission to speak on the campus that day. Sonnier and the other individuals left SLU’s campus. Since their departure, Sonnier has not filed an application to speak on SLU’s campus and has not returned to the campus.
The SLU speech policy states generally that:
• Southeastern Louisiana University recognizes that freedom of speech and assembly are basic and essential to both intellectual and social development. These freedoms, guaranteed by the First and Fourteenth Amendments to the United States Constitution, shall be enjoyed by the university community at Southeastern. Free discussion of ideas *439 of either controversial or non-controversial nature shall not be curtailed.
These freedoms, however, are not absolute. Colleges and universities have well-established rights to regulate time, place, and manner so that activities do not intrude upon or interfere with the academic programs and administrative processes of the university. The university may designate one or more areas on campus where individuals may assemble and engage in speech activities. All speech and assembly activities must be conducted in accordance with university regulations.
The SLU speech policy then provides specific regulations governing the time,[1] place,[2] and manner[3] of speech. The policy *440 also provides provisions regarding payment of security fees in particular situations.[4]
On November 4, 2008, Sonnier filed an action under 42 U.S.C. §§ 1983, 1988, alleging that the SLU speech policy violates his First Amendment right to free speech. More particularly, Sonnier challenged five provisions of SLU’s speech policy: (1) the seven-day notice requirement; (2) the two-hour, once-per-week limitation; (3) the collection of personal information; (4) the security fee requirement; and (5) the limitation of speech to three specific locations. Sonnier instituted a facial and an as-applied challenge to these provisions of SLU’s speech policy, seeking injunctive and declaratory relief, as well as nominal damages. At the time he filed his action, Sonnier also moved for a preliminary injunction restraining enforcement of the speech policy. On March 3, 2009, after hearing arguments of counsel, the district court denied Sonnier’s motion for a preliminary injunction. Sonnier filed this timely appeal.
II. STANDARD OF REVIEW
We review the denial of a preliminary injunction for an abuse of discretion, but a decision grounded in erroneous legal principles is reviewéd de novo. Women’s Med. Ctr. v. Bell, 248 F.3d 411, 418-19 (5th Cir.2001); Hoover v. Morales, 164 F.3d 221, 224 (5th Cir.1998); Concerned Women for America, Inc. v. Lafayette County, 883 F.2d 32, 34 (5th Cir.1989). See also Doran v. Salem Inn, Inc., 422 U.S. 922, 931-32, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (“But while the standard to be applied by the district court in deciding whether a plaintiff is entitled to a preliminary injunction is stringent, the standard of appellate review is simply whether the issuance of the injunction, in the light of the applicable standard, constituted an abuse of discretion.”) (citing Broum v. Chote, 411 U.S. 452, 457, 93 S.Ct. 1732, 36 L.Ed.2d 420 (1973)).
A district court should issue a preliminary injunction only if the plaintiff establishes: (1) a substantial likelihood of suc *441 cess on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury caused by the denial of the injunction outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. Palmer v. Waxahachie Indep. Sch. Dist, 579 F.3d 502, 506 (5th Cir.2009). In this appeal, the parties only dispute the first requirement; SLU does not dispute that Sonnier has met the other three requirements. Therefore, we only examine whether the district court abused its discretion in finding that Sonnier did not have a substantial likelihood of success on the merits.
In free speech cases, the court must first determine the type of fora. There are three types of fora: the traditional public fora, the designated public fora, and the non-public fora. Ark. Educ. Television Comm’n v. Forbes, 523 U.S. 666, 677, 118 S.Ct. 1633, 140 L.Ed.2d 875 (1998). The parties agree that the fora in this case is either a public fora or a designated public fora. Appellant’s Brief, at 1821; Appellee’s Brief, at 11. We agree. The scrutiny applied to time-place-manner restrictions is the same for both a public fora and a designated public fora. United States v. Kokinda, 497 U.S. 720, 726, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990). Therefore, we need not determine whether the locations on SLU’s campus that are at issue in this case are public fora or designated public fora.
Content-neutral time-place-manner restrictions are examined under intermediate scrutiny, meaning they are permissible so long as they are narrowly tailored to serve a significant governmental interest and leave open ample alternative channels for communication of the information. Turner Broad. Sys. v. FCC, 520 U.S. 180, 213-14, 117 S.Ct. 1174, 137 L.Ed.2d 369 (1997); Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Content-based time-place-manner restrictions are examined under strict scrutiny, meaning they must be narrowly drawn to effectuate a compelling state interest. Perry Educ. Ass’n v. Perry Local Educators’ Ass’n, 460 U.S. 37, 46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Sonnier acknowledges that the first, second, third, and fifth challenged provisions are content-neutral. TR at 188. Sonnier alleges the fourth challenged provision is content-based. Id.
Sonnier agrees that SLU has a significant interest in implementing a speech policy that promotes education and minimizes disruptions to the academic setting. TR at 189. Sonnier’s central objection to the policy is that it is not narrowly tailored to serve SLU’s interest. We agree that SLU has a strong interest in promoting education. Therefore, we only examine whether the district court abused its discretion in finding that the speech policy was narrowly tailored to serve SLU’s interest.
A restriction is narrowly tailored when it does not “burden substantially more speech than is necessary to further the government’s legitimate interests.” Ward, 491 U.S. at 798-99, 109 S.Ct. 2746. “In the context of intermediate scrutiny, narrow tailoring does not require that the least restrictive means be used. As long as the restriction promotes a substantial governmental interest that would be achieved less effectively without the restriction, it is sufficiently narrowly tailored.” SEIU v. City of Houston, 595 F.3d 588, 596 (5th Cir.2010) (quoting Ward, 491 U.S. at 798, 109 S.Ct. 2746 (1989)). “What constitutes a reasonable, narrowly tailored regulation depends on a variety of factors, including the character *442 of the place in which the regulation is enforced.” Id. at 599. Thus, we examine all of the restrictions at issue in the context of the location where they are to be enforced: a college campus.
III. SCOPE OF APPEAL
Sonnier argues that the district court erred in denying both his facial challenge to the SLU speech policy and his as-applied challenge. The defendants argue that the district court, without objection from the parties, adopted a trial plan to consider only the facial challenge in its consideration of the preliminary injunction and defer consideration of the as-applied challenge until the evidentiary hearing on the permanent injunction that is scheduled for February 2010.
Under Fed.R.CivP. 65(a), a district court has broad discretion in deciding whether to consolidate a preliminary injunction with the hearing of the motion for the permanent injunction. See Dillon v. Bay City Constr. Co., 512 F.2d 801, 804 (5th Cir.1975). “The rule permits the Trial Judge to flexibly merge and hear the component parts of a case thereby avoiding repetition and unnecessary delay.” Id.
Although in this motion for preliminary injunction Sonnier brought both a facial challenge and an as-applied challenge, the district court’s trial plan is evident in the court’s comments throughout the hearing on the preliminary injunction. The court began the hearing on the motion for preliminary injunction by asking a number of preliminary questions to counsel, including questions about what occurred just before Sonnier was escorted from the campus. Thereafter the court stated:
It sounds like you all have some key factual issues that are in dispute as to what occurred here when Mr. Sonnier went on campus as well as some other issues that maybe pertinent for a resolution of the constitutional questions, particularly as regards to perhaps application and the execution of this policy, but I’m dealing here with the policy on its face. While you concede that it maybe content neutral on its face, I haven’t heard an argument that it’s applied, at least, because you haven’t gone into discovery yet on this, whether it’s applied just to say religious groups or certain groups as opposed to others.... It seems as if there’s some facts that need to be determined here to resolve this particular case.
Transcript Record (“TR”) at 22021 (emphasis added).
The court, in its ruling, then stated:
... I don’t find that here the policy of the university, or at least the present set of facts that I have before me, would justify the in [sic] granting a preliminary injunction. I would require further discovery on its execution, as well as on the actual circumstances surrounding this incident, because there’s differences of opinions on the facts here as presented on what occurred that day with Mr. Sonnier and campus officials. So it will require further discovery, but on its face it’s content neutral, the policy that is. I make a preliminary finding that it does not appear to violate First Amendment issues insofar as the policy itself on its face.
In denying the preliminary injunction request, however, we reserve the right to revisit all of these particular issues as further facts are developed, but on its face I don’t find that there’s a basis at this time for the issuance of a preliminary injunction.
Id. at 228-29.
Sonnier never objected during the hearing to the district court’s decision to pro *443 ceed to hear the facial challenge. Although there is no express agreement in the record by Sonnier to limit the hearing to a facial challenge, Sonnier’s counsel did announce at the beginning of the hearing that he had no witnesses to present and it’s clear from the record that Sonnier had conducted little or no discovery.[5] In fact, Sonnier resisted providing initial rule 26 discovery requested by the defendants.
In sum, Sonnier gave no indication to the court that his focus at the preliminary injunction hearing was on anything other than the facial challenge consistent with the judge’s announcement that this was the sole issue that it intended to resolve at the hearing. This is consistent with Sonnier’s motion to stay proceedings in the district court pending appeal where he stated:
The issues of this case depend heavily on disputes of law, not of fact. The primary challenge to SLU’s policy in this case is a facial challenge. Thus, the Fifth Circuit will address purely legal issues to determine the likelihood of plaintiffs success on the merits. And, once the Fifth Circuit speaks to the meaning of the law, the case would essentially be resolved.
Given the position of the parties at the hearing, the court was justified in addressing only the facial challenge to SLU’s regulations at the hearing on the preliminary injunction and waiting to address the[1] as-applied challenge until the hearing on the permanent injunction.
Therefore, on appeal, we only review the district court’s denial of a preliminary injunction for Sonnier’s facial challenge, reserving the right of Sonnier to present evidence to support his as-applied challenge and his facial challenge at the upcoming hearing on the permanent injunction.
IV. ANALYSIS
“A facial challenge ... is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exist under which the Act would be valid.” United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).[6] See United States v. Stevens, — U.S. -, 130 S.Ct. 1577, 1580, 176 L.Ed.2d 435 (2010) (stating that the Salerno standard is a standard used to succeed in a typical facial attack). A facial challenge will fail when the statute has a “plainly legitimate sweep.” Washington v. Glueksberg, 521 U.S. 702, 740 n. 7, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (Stevens, J., concurring in judgments). The Supreme Court has explained why abstract facial challenges are disfavored:
*444 Facial challenges are disfavored for several reasons. Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of “premature interpretation of statutes on the basis of factually barebones records.” Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither “ ‘anticipate a question of constitutional law in advance of the necessity of deciding it’ ” nor “ ‘formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.’ ” Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution. We must keep in mind that “ ‘[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.’ ”
Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 128 S.Ct. 1184, 1191, 170 L.Ed.2d 151 (2008) (citations omitted). The Court expressed similar sentiments in Sabri v. United States, 541 U.S. 600, 608-09, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004) (citations omitted): “[Fjacial challenges are best when infrequent. Although passing on the validity of a law wholesale may be efficient in the abstract, any gain is often offset by losing the lessons taught by the particular, to which common law method normally looks.”
We examine each of the challenged provisions separately.
A.
Sonnier argues first that the requirement that an application to assemble or demonstrate be made seven days in advance is not narrowly tailored. The defendants argue that the seven-day notice requirement is permissible because public universities have duties and responsibilities that require such advanced notice.
In Bowman v. White, the Eighth Circuit reviewed the district court’s ruling on a facial, overbreadth, and as-applied challenge to the validity of a university’s three-day notice requirement. The court stated that the “modest nature” of a three-day notice requirement for public speeches, combined with the “University’s reduced capacity to address ‘the exigencies of determining what, if any, security, crowd control, additional insurance’, etc., will be required for a particular event,” made the notice requirement “sufficiently narrowly tailored.” 444 F.3d 967, 982 (8th Cir.2006) (citations omitted). In finding the three-day notice requirement constitutionally permissible, the Eighth Circuit specifically distinguished University settings from other public forums. The Bowman court distinguished its case from the earlier case of Douglas v. Brownell, 88 F.3d 1511, 1523-24 (8th Cir.1996), in which the court struck down a five-day notice requirement to picket or parade in city streets. The Bowman court found its case differed from Douglas because the forum in Bowman was a college campus whereas the forum in Douglas was a city street. Bowman, 444 F.3d at 982. The Bowman court explained that “a university is less able than a city or other entity with police powers to deal with a significant disruption on short notice.” Id.
The Fourth Circuit has similarly stated that universities have unique, particular concerns that must factor into a court’s review of the university’s speech policy. See ACLU Student Chapter v. Mote, 423 F.3d 438, 445 (4th Cir.2005) (allowing the University of Maryland to require non-students to reserve a spot to speak or distribute leaflets up to five days in advance); Glover v. Cole, 762 F.2d 1197, 1203 *445 (4th Cir.1985) (stating that “[a] college has a right to preserve the campus for its intended purpose and to protect college students from the pressures of solicitation”).
We agree with the distinction drawn by the Fourth and Eighth Circuits. Universities are less equipped than cities and other public fora (or designated public fora) to respond to disruptions on short notice. Providing a university with advance notice allows the university to adequately take care of any issues associated with the public speech or demonstration that might hamper the university’s ability to meet its primary goal — the education of its students.
Sonnier argues that “concerns over traffic, crowd control, property maintenance, or the public welfare do not justify long notice requirements.” However, he cites no case concerning a college campus that makes this assertion. Instead, the cases cited by Sonnier relate to notice requirements for speech on city streets and public parks. See, e.g., Sullivan v. City of Augusta, 511 F.3d 16, 38-40 (1st Cir.2007) (striking down a thirty-day notice requirement for parades on city streets); Douglas, 88 F.3d at 1523-24 (striking down a five-day notice requirement for parades and pickets on city streets); Grossman v. City of Portland, 33 F.3d 1200, 1204-08 (9th Cir.1994) (striking down a seven-day notice requirement for public speeches and demonstrations in public parks). Because public universities have different needs and limitations than cities, the cases cited by Sonnier are not controlling in this case.
Additionally, Sonnier objects to the seven-day notice requirement because there is no small group or individual exception. Sonnier argues that under Fifth Circuit precedent, “ordinances requiring a permit for demonstrations by a handful of people are not narrowly tailored to serve a significant government interest.” Knowles v. City of Waco, 462 F.3d 430, 436 (5th Cir.2006). But these also only relate to cities and not to universities. See, e.g., American-Arab Anti-Discrimination Comm. v. City of Dearborn, 418 F.3d 600, 608 (6th Cir.2005) (requiring a small group exception for a permit to hold a special event in the City of Dearborn); Cox v. City of Charleston, 416 F.3d 281, 284-86 (4th Cir.2005) (requiring a small group exception for a permit to hold a gathering in the City of Travelers Rest). Both the Eighth Circuit and the Second Circuit have not required an individual or small group exception for advanced-notice requirements on university campuses. See Bowman, 444 F.3d at 982; Powe v. Miles, 407 F.2d 73, 84 (2d Cir.1968). In fact, in Bowman, the Eighth Circuit upheld the permit requirement even when the speaker was a single, traveling street preacher, much like Sonnier.[7]
We acknowledge that the seven-day notice requirement is longer than notice requirements considered by other circuits, but this modest increase in length does not lead us to conclude that the regulation is not narrowly tailored for Sonnier’s facial challenge. In order to succeed in a facial challenge, the plaintiff must establish the regulation would be invalid in all circumstances. Wash. State Grange, 128 S.Ct. at 1191. There are situations in which a seven-day notice may well be required. If Sonnier expected to attract a large number of students with his message, SLU might need the entire seven days to logistically prepare for Sonnier’s *446 arrival.[8] If Sonnier desired to speak on SLU’s campus at the same time as a number of other individuals and organizations wished to speak on SLU’s campus, SLU might need the entire seven days to organize when each individual would speak. If Sonnier or another speaker wished to speak at a time when multiple members of the SLU administration were scheduled to be out of the office, SLU might need the entire seven days to coordinate who would attend the event. Given that there are instances in which the seven-day notice requirement may be necessary, the district court did not abuse its discretion in denying the preliminary injunction for the facial challenge of the seven-day notice requirement.[9]
B.
Next, Sonnier argues that limiting the amount of time an individual or organization may speak on campus to two hours, once per week, is not narrowly tailored. He compares the regulation to a provision that was struck down in Bowman. The defendants distinguish the SLU regulation from the Bowman provision by arguing that the SLU regulation is less restrictive.
In Bowman, reviewing the district court’s ruling on a facial, overbreadth, and as-applied challenge, the court struck down a provision that limited a person’s ability to speak on a college campus to five days per semester because the provision was not narrowly tailored. 444 F.3d at 981-82. The Eighth Circuit found that while a university had a significant interest in fostering a diversity of viewpoints and preventing one speaker from monopolizing space on the campus, the provision was not narrowly tailored to achieve those interests. Id. at 982.
We agree with the defendants that the SLU policy is less restrictive than the policy at issue in Bowman. While the Bowman policy restricted speakers to speaking five times per semester, the SLU regulation allows speakers to speak sixteen times per semester.
More importantly, however, Sonnier has not demonstrated that the SLU regulation is invalid in all circumstances. There are situations in which limiting the number of times an individual speaks on campus and the length of time an individual speaks on campus are valid means for SLU to protect its legitimate interests. If a large number of individuals or organizations wish to speak on campus during the same week, the University must have a nondiscriminatory manner of granting permission to as many diverse speakers as possible. By restricting all of the speakers to two hours per week, the University can better ensure that the greatest number of different individuals and organizations are able to deliver their message on campus. Accordingly, we find the district court did not abuse its discretion in denying Sonnier’s facial challenge to this regulation.
C.
Next, Sonnier asserts that requiring an applicant to disclose personal information about himself or herself is not narrowly tailored to achieve SLU’s interest. The defendants contend that requiring the *447 disclosure of personal information about speaker applicants is necessary to address public safety concerns and ensure broad access to the University.
Other circuits have allowed public entities, including universities, to require a speaker to provide personal information to obtain a permit. See Bowman, 444 F.3d at 980-81 (upholding a requirement that speakers obtain a permit on a college campus); Hobbs v. County of Westchester, 397 F.3d 133, 150-51 (2d Cir.2005) (upholding a requirement that people planning to use props and/or equipment during performances in a public forum obtain a permit); S. Or. Barter Fair v. Jackson County, 372 F.3d 1128 (9th Cir.2004) (upholding a state statute that required applicants for outdoor gatherings to submit, among other things, their name, address, estimated attendance, and nature of the proposed gathering). Sonnier cites Watchtower Bible and Tract Society of New York v. Village of Stratton, 536 U.S. 150, 166-67, 122 S.Ct. 2080, 153 L.Ed.2d 205 (2002), for the proposition that he has the right to speak anonymously. Watchtower, however, held that a village could not require a door-to-door distributor of handbills to register with the Mayor’s office before canvassing private homes. We agree with Sonnier that the Court has found anonymous door-to-door pamphleteering to be protected by the First Amendment. However, Sonnier is not engaging in door-to-door pamphleteering on private property; Sonnier is speaking on a public university’s campus. Therefore, we find the cases concerning permit requirements to speak in public forums more instructive than Watchtower.
The SLU policy requires the applicant’s name, address, phone number, social security number, date of birth, proposed location, date, and time of the speech, anticipated number of participants, and purpose of the assembly. We agree with the defendants that this regulation is narrowly tailored to their significant interest for Sonnier’s facial challenge. By knowing the identity of speakers on campus, where they intend to speak, and their purpose, the University is better equipped to ensure that necessary safety and security precautions are taken. Also, obtaining information regarding the future speech allows the University to take any steps required in advance to continue normal education functions during the speech. While there may be circumstances in which all of the information requested by SLU is not narrowly tailored, Sonnier has not demonstrated that in every instance this regulation is invalid. Therefore, the district court did not abuse its discretion in denying the preliminary injunction for this permit requirement.
D.
Sonnier argues next that SLU’s speech policy violates the First Amendment because it gives the University the “sole discretion ... in determining both the need for, and the strength of the security” at the public assembly or demonstration, and assesses the cost of additional security on the sponsoring individual or organization. In response, the defendants assert that the fee has never been charged. Regardless of whether the fee has ever been charged, we agree with Sonnier.
In Forsyth County v. Nationalist Movement, the U.S. Supreme Court struck down a virtually identical security fee provision that required organizations to pay for “the cost of necessary and reasonable protection [for assemblies] ... [that] exceeds the usual and normal costs of law enforcement....” 505 U.S. 123, 126, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992). The Forsyth County Court found the security fee unconstitutional because, among other *448 reasons, the regulation included no objective standards directing how to establish the level of the fee. Instead, the amount of the security fee was left to the “whim of the administrator.” Id. at 133, 112 S.Ct. 2395.
The SLU security fee provision has the same shortcomings as the ordinance struck down in Forsyth County. As the policy states, determining the additional amount of security needed is at the “sole discretion” of the University; no objective factors are provided for the University to rely upon when making such a determination.[10] Because of the unbridled discretion this provision gives to the University, we conclude that the district court abused its discretion in denying a preliminary injunction with regards to the security fee.
E.
Sonnier finally contends that the requirement that all assemblies and demonstrations must occur in three specific on-campus venues is an overly broad restriction of speech. Further, Sonnier argues that the SLU’s speech policy unconstitutionally bans him from speaking on the campus’ sidewalks. The defendants argue that the policy does not prohibit Sonnier from speaking on the University’s sidewalks and that limiting the geographic area for non-students to speak and assemble is proper.
Our reading of SLU’s speech policy is consistent with the defendants reading of the policy: nothing in the policy prohibits Sonnier from walking on the sidewalks of the SLU campus and speaking to students. The policy simply precludes group demonstrations and assemblies from occurring on the University sidewalks. The University obviously has a significant interest keeping its sidewalks and streets open to allow students and others access to the campus.
“The courts reject the proposition ‘that a campus must make all of its facilities equally available to students and nonstudents alike, or that a university must grant free access to all of its grounds or buildings.’ ” Gilles v. Blanchard, 477 F.3d 466, 470 (7th Cir.2007) (citing Widmar v. Vincent, 454 U.S. 263, 268 n. 5, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981). See also A.C.L.U. v. Mote, 423 F.3d 438, 445 (4th Cir.2005)) (holding that a university may require outside speakers to speak from particular, pre-scheduled locations on campus). Undoubtedly, SLU has a significant interest in preserving its property for educational purposes and limiting where outside speakers may assemble or demonstrate is narrowly tailored to that purpose. See Adderley v. Flonda, 385 U.S. 39, 47, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966) (“The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.”); Bowman, 444 F.3d at 978 (“[A] university’s mission is education and the search for knowledge— to serve as a ‘special type of enclave’ devoted to higher education. Thus, streets, sidewalks, and other open areas that might otherwise be traditional public fora may be treated differently when they fall within *449 the boundaries of the University’s vast campus.”).
We find no authority — and Sonnier provides none[11] — that requires a public university to throw open its entire campus for public assemblies or demonstrations. The district court did not abuse its discretion in denying a preliminary injunction as to the location limitations for where a speaker may address the students.
CONCLUSION
For the above reasons, we AFFIRM the district court’s order denying the preliminary injunction on Sonnier’s facial challenge to the following provisions on the SLU speech policy: (1) the seven-day notice requirement, (2) the two-hours, once-per-week limitation, (3) the collection of personal information, and (4) the limitation of speech to three specific locations. We REVERSE the district court’s order denying the preliminary injunction with regard to SLU’s security fee requirement, and grant the preliminary injunction restraining defendants from enforcing this portion of the speech policy.
Affirmed in part.
Reversed in part.

. The SLU speech policy concerning time restrictions states:
In accordance with U.S. Federal Court decisions, the University has the right to regulate the time of speech or assembly activities. A two (2) hour time period will be provided to individual(s) and/or organizations for these purposes at Southeastern. Speech/assembly activities will be limited to one two hour time limit per seven-day period, commencing the Monday of each week.

. The SLU speech policy concerning place restrictions states:
The university has designated the following sites for public discussion and/or peaceful public assembly or demonstration: (1) the steps in front of the Student Union Annex and the grassy area immediately in front of the steps and bounded by the sidewalk; (2) the grassy area in front of the Claude B. Pennington, Jr. Student Activity Center; (3) Presidential Plaza area north of the Student Union, as areas where public speech and assemblies may be conducted by students without prior administrative approval. Individuals) or organizations wishing to use such areas will be required to register the public speech or assembly a minimum of seven (7) days in advance through the office of Assistant Vice President of Student Affairs.
Public assembly, discussion or demonstration shall not disturb or interfere with any program, event, or activity approved prior to the public assembly, discussion or demonstration; shall not unreasonably disturb or interfere with normal operations and activities of the university; and will not be scheduled during other major events already scheduled on campus. Use of the area shall not include activities which could constitute non-permissible solicitation or which would be an infraction of the university sign policy in regards to indiscriminately handing out materials to passers-by.

. The SLU speech policy concerning manner restrictions states:
Any individual(s) or organization may publicly assemble or demonstrate in a peaceful manner after attaining the permission of the Assistant Vice President of Student Affairs or his or her designee.
1. An application to assemble publicly or demonstrate must be made seven (7) days in advance on a form provided by the Assistant Vice President of Student Affairs and shall contain:
(a) the applicant's name, address, phone number, social security number and date of birth;
(b) the proposed location, date and time for the assembly or demonstration;
(c) the anticipated number of participants; including a list of authorized representatives of the organization who will be present along with their addresses, phone numbers, dates of birth, social security number and their purpose for being there, i.e. speaking, helping with setup, etc. (ID cards will be provided to these individuals);
(d) the purpose of the assembly or demonstration;
(e) the signature of the applicant or, if an organization, its authorized representative.
3. [sic] The Assistant Vice President of Student Affairs shall approve an application properly made under section 2 unless there are reasonable grounds to believe that:
(a) the applicant is under a disciplinary penalty prohibiting publicly assembling or demonstrating;
(b) the proposed location is unavailable or inappropriate at the time requested;
(c) the proposed date and time are unreasonable;
(d) the assembly or demonstration would unreasonably obstruct pedestrian or vehicular traffic;
*440 (e) the speech will constitute a clear and present danger to the institution's orderly operation, to students, faculty or staff, or property, through advocacy of immediate action.
4. The manner approved for the public assembly or demonstration will include but is not limited to the following conditions.
(a) Individual(s) or organizations will be restricted to the place described in the registration and are not allowed to leave that area to conduct their assembly.
(b) No harmful acts, destruction or defacement of property, or physical assaults of persons will be allowed. This includes threats and/or intimidation aimed at particular individuals and creating in them a realistic fear for their personal safety or the security of their property.
(c) No use of amplification devices is allowed.
(d) The speech may not be projected onto private areas, such as resident hall rooms or classrooms and thereby creating captive audiences who cannot guard their privacy by avoiding the speech.

. The SLU speech policy concerning security fees states:
The freedom of ideas is limited only by certain practical constraints, necessitated by such considerations as securing the safety of person and property and the need to prevent disruption of the learning environment. The use of Southeastern Louisiana University Administration staff; University Police, city of Hammond Police, Tangipahoa Sheriffs Deputies, Louisiana State Police, or a private security company in connection with the event is at the sole discretion of the University in determining both the need for, and the strength of the security detail. The sponsoring individual(s) or organization is responsible for the cost of this security beyond that normally provided by the University, specifically those administrators/officers who must be assigned directly to the event and/or away from their normal operational duties.

. For example, Sonnier had no discovery or evidence designed to show why the University’s regulations were not narrowly tailored or how the regulations could be more narrowly drawn and still serve the University’s legitimate purposes.

. In the First Amendment context, a challenger may also succeed by establishing that the regulation is impermissibly overbroad because a substantial number of its applications are unconstitutional. Wash. State Grange, 128 S.Ct. at 1191 n. 6; New York v. Ferber, 458 U.S. 747, 769 (192), 102 S.Ct. 3348, 73 L.Ed.2d 1113. In this case, however, Sonnier stated during appellate oral argument that this was a "regular” facial challenge and not an overbreadth facial challenge. See also Appellant's Reply Brief, at 23 (discussing the differences between a facial challenge and a facial overbreadth challenge). Moreover, a challenger may only bring either an as-applied challenge or an overbreadth challenge, but he may not bring both. See Virginia v. Hicks, 539 U.S. 113, 118-19, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003). Because Sonnier brought an as-applied challenge that is still pending before the district court, he cannot argue an overbreadth challenge on appeal.

. The Bowman court noted that the speaker drew crowds when he spoke, sometimes as large as 200 students, but the permit require-men! was placed on the speaker alone, regardless of the number of students he expected.

. Sonnier's counsel even slated at the hearing on the preliminary injunction that "if they were applying for a group of a hundred people that want to come and speak on campus you would need time to prepare adequately for that.” TR at 194.

. Sonnier will have the opportunity to produce evidence at the hearing for the permanent injunction that demonstrates the seven-day notice requirement is not narrowly tailored as applied to him, and the defendants will have to justify why, as applied to Sonnier, the requirement is narrowly tailored.

. The defendants also cite Cox v. New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941) for the proposition that a government may impose fees on speakers for the expenses incident to speech. The defendants, however, misread Forsyth County's interpretation of Cox. In Forsyth County, the Court distinguished Cox because "there was in Cox no testimony or evidence that the statute granted unfettered discretion to the licensing authority,” whereas in Forsyth County, as in this case, there was evidence that the administrator of the fees in question had unbridled discretion to set the fees. See Forsyth County, 505 U.S. at 133 n. 11, 112 S.Ct. 2395.

. None of the cases that Sonnier cites address the question presented here, namely whether a public university may limit public speech to particular areas on the campus. Instead, the cases Sonnier cites discuss whether particular areas of college campuses constitute a public fora. These cases do not stand for the proposition that a college campus must allow non-students to assemble or demonstrate on all areas of the campus.

. The transcript says "could,” not "couldn’t,” but the context makes it clear that Sonnier’s counsel must have said (or intended to say) "couldn’t.”