PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DENNIS GREEN,

*Plaintiff-Appellant,*

v.

CITY OF RALEIGH; JANE PERLOV, individually and in her official capacity as Chief of Police for the City of Raleigh,

*Defendants-Appellees.*

No. 07-1351

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(5:05-cv-00102-BO)

Argued: January 29, 2008

Decided: April 16, 2008

Before MOTZ, TRAXLER, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Traxler and Judge Duncan joined.

## COUNSEL

**ARGUED:** Nathan W. Kellum, ALLIANCE DEFENSE FUND, Memphis, Tennessee, for Appellant. Dorothy K. Leapley, Deputy City Attorney for the City of Raleigh, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Jonathan A. Scruggs, ALLIANCE

DEFENSE FUND, Memphis, Tennessee, for Appellant. Thomas A. McCormick, City Attorney for the City of Raleigh, Raleigh, North Carolina, for Appellees.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

This appeal involves challenges to the constitutionality of city ordinances requiring those who wish to picket on public ways to provide the city with prior notice of this intent and comply with certain restrictions while picketing. The district court held that the ordinances do not violate the First Amendment. We affirm.

I.

On August 23, 2003, Dennis Green and at least ten others met outside the RBC Center in Raleigh, North Carolina (the "City"). The group distributed flyers to attendees of a Promise Keepers event, carried signs, and picketed in the parking lot adjacent to the Center. After approximately an hour, an off-duty police officer working security requested that Green and his companions leave the area. The officer explained that the Center and attached parking areas were private property and that the group could be cited for trespass violations.

The group moved to a grassy right-of-way along a public street near the Center and resumed picketing. Upon learning of its relocation, the officer contacted the police department to ask if the group had notified the City of its intent to picket and been issued a receipt of this notice.

When the officer learned that the group had neither notified the City nor obtained a receipt of notice, he explained to the group that picketing without a receipt violated the City's ordinances and that refusal to leave the area could result in citations and fines as well the confiscation of signs. Green and his group left the area.

On February 10, 2005, Green filed this action, seeking injunctive and declaratory relief, actual and/or nominal damages, and attorney's

fees against the City and its Chief of Police, Jane Perlov, in both her individual and official capacities. Green alleges that certain portions of the City ordinances violate his First Amendment rights to free speech and peaceable assembly. Specifically, Green alleges in his complaint, *inter alia*, that the City ordinances effective at the time of his picketing in 2003 unconstitutionally required picketers to provide the police department with notice of their intent to picket (the "notice requirement") and to submit information regarding the name of the organization demonstrating, the time and location of the event, and the name of the individual designated to carry the receipt of notice (collectively, the "disclosure requirement"). Raleigh, N.C., City Code §§ 12-1056, 12-1057(g) (2003). Green also challenges provisions that restricted picketers to signs of no larger than two feet (the "sign-size requirement") and that required picketers to remain on the outermost part of the sidewalk (the "outermost sidewalk requirement"). § 12-1057(b), (e) (2003).

In March 2006, the City revised and liberalized the picketing ordinances by eliminating the notice requirement for groups of fewer than ten picketers (the "small-group exception"), allowing anonymous picketing by any group (with only the name of the individual holding the receipt of notice required), and enlarging the allowable sign size. Raleigh, N.C., City Code §§ 12-1056(b), 12-1057(b) (2006).[1] Although Green did not file an amended complaint challenging the new ordinances, he maintained (and continues to maintain on appeal) that the amended ordinances offended his right to free speech "in the same manner" as the original ones, and he also challenges the small-group exception added in the amended ordinance. The City does not contend that Green's failure to amend his complaint bars consideration of his challenges to the amended ordinances. Accordingly, we treat his challenges to the amended ordinances "in all respects as if raised in the pleadings." *See* Fed. R. Civ. P. 15(b).

After discovery, the district court dismissed Green's claims against Chief Perlov, holding that the claims against her in her official capacity were indistinguishable from the claims against the Raleigh Police Department and that she was entitled to qualified immunity for the

---

[1]We reproduce the original and revised ordinances in their entirety in an appendix to this opinion.

claims against her in her individual capacity. Green does not appeal these rulings. The district court then granted the City's motions for summary judgment on Green's remaining claims.

On appeal, Green challenges both the original and amended ordinances. He argues that provisions in the original ordinances were unconstitutional *as-applied* to his conduct on August 23, 2003; he has abandoned any *facial* challenge to the original ordinances by failing to raise this claim in his opening brief. *See United States v. Al-Hamdi*, 356 F.3d 564, 571 n.8 (4th Cir. 2004). However, Green does raise both *facial* and *as-applied* challenges to the amended ordinances.

## II.

We first consider preliminary questions as to Green's standing and the possible mootness of some of his challenges. We review *de novo* the district court's holdings on these questions. *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005).

### A.

#### 1.

Green contends that the district court erred in holding that he lacked standing to bring as-applied challenges to the outermost sidewalk and disclosure requirements as well as to the absence of a small-group exception. Neither Green nor the City disputes that Green does have standing to mount as-applied challenges to the notice and sign-size requirements.

With respect to the outermost sidewalk requirement, we agree with the district court that Green does lack standing to bring an as-applied challenge. Green was never ordered to remain on the outermost sidewalk because, in fact, there was no sidewalk where Green's group chose to picket. After leaving the RBC Center, Green and the other picketers moved onto the grassy right-of-way along a public road. Police never asked Green or others to move to any section of the right-of-way and indeed never referred to this requirement at any point. Thus, the City never applied this requirement to Green's conduct.

We believe the district court did, however, err in holding that Green lacked standing to bring an as-applied challenge to the disclosure requirement. Although Green did not comply with the requirement that he reveal his identity to the City, indisputably a security officer told Green's group that failure to submit a notice of intent to picket would violate the City ordinances. Green could not have obtained a receipt entitling him to picket unless he informed the City of "[t]he name, if any, of the organization or group sponsoring or proposing to picket," "[t]he name of the person and organization giving notice of intent to picket," and "[t]he person or persons to be in charge of the activity and who will accompany it and carry any receipt of notice at all times." § 12-1056(b)(1), (4), (6) (2003). Mandating Green's possession of a receipt of notice hence also mandated his conformance with the ordinance's disclosure requirement. "The Constitution can hardly be thought to deny to one subjected to the restraints of such an ordinance the right to attack its constitutionality, because he has not yielded to its demands." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969) (internal quotation marks omitted). Thus, Green possesses standing to bring an as-applied challenge to the disclosure requirement.

The district court also erred when it held that Green lacked standing to challenge the original ordinances as they were applied to his group of eleven or more persons on August 23, 2003. The district court reasoned that because the original ordinances contained no small-group exception, the exception could not have been applied to Green. But Green challenges the *absence* of a small-group exception in the original ordinances. That is, Green maintains that because the original ordinances contained no exception for small groups, the ordinances were unconstitutionally applied to his group on August 23, 2003. Clearly Green has standing to bring this as-applied challenge to the original ordinances.

2.

The City argues that the district court erred in holding that Green has standing to assert a facial challenge to the amended picketing ordinances. According to the City, the amended ordinances cannot be challenged for facial overbreadth unless they are "substantially overbroad."

As the district court explained, the City's argument confuses standing with a final determination of overbreadth on the merits. Green's overbreadth challenge will fail if he cannot adequately demonstrate that a challenged provision "reaches a substantial amount of constitutionally protected conduct." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982). But "[a] plaintiff's standing to bring a case does not depend upon his ultimate success on the merits underlying his case," because otherwise "'every unsuccessful plaintiff will have lacked standing in the first place.'" *Covenant Media of S.C., LLC v. City of N. Charleston*, 493 F.3d 421, 429 (4th Cir. 2007) (quoting *White Tail Park*, 413 F.3d at 461).

The district court thus did not err in holding that Green possesses standing to mount a facial challenge to the amended ordinances.

B.

Having resolved the standing issues, we address the City's mootness contention. The City maintains that the district court erred when it held that Green's as-applied challenges to the original ordinances survived their amendment. Substantial amendment to a statute or ordinance may moot a challenge to the original law when "there is no practical likelihood" that the regulation will be reenacted in its original form. *See Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006). But a challenge survives if the amended ordinances are "sufficiently similar . . . that it is permissible to say that the challenged conduct continues." *Ne. Fla. Chapter of the Associated Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 662 & n.3 (1993); *see also Nutritional Health Alliance v. Shalala*, 144 F.3d 220, 227 n.13 (2d Cir. 1998); *Rosenstiel v. Rodriguez*, 101 F.3d 1544, 1548 (8th Cir. 1996).

The amendments to the picketing ordinances here do not moot Green's as-applied challenges to the original ordinances. The notice, sign-size, and disclosure requirements in the new ordinances are "sufficiently similar" to the equivalent provisions in the original ordinances "that it is permissible to say that the challenged conduct continues." *Associated Gen. Contractors*, 508 U.S. at 662 & n.3. Moreover, the addition of a small-group exception does not moot Green's as-applied challenge to the original ordinances' application to a group of his size. Given that Raleigh's amended ordinances exempt

groups of fewer than ten individuals, and Green's group was perhaps as small as eleven people, we believe that the underlying "case or controversy" — namely, whether Raleigh's original ordinances could constitutionally be applied to groups of such size — survives the amendment. Accordingly, the City's mootness argument fails.

## III.

We turn now to the merits of Green's challenges. In doing so, of course, we bear in mind that, with respect to the original ordinances, Green has preserved no facial challenge and has no standing to challenge the outermost sidewalk provision that they contained. Therefore, to the extent that we consider the constitutionality of the original ordinances, we do so only in the context of Green's as-applied challenges to their notice, disclosure, and sign-size requirements, as well as his challenge to their application to a group the size of his.

"An ordinance that requires individuals or groups to obtain a permit before engaging in protected speech is a prior restraint on speech." *Cox v. City of Charleston*, 416 F.3d 281, 284 (4th Cir. 2005). However, as the Supreme Court has explained, even a prior restraint can survive constitutional challenge, provided that it is a content-neutral time, place, and manner regulation that satisfies certain constitutional requirements. *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992); *see also Thomas v. Chi. Park Dist.*, 534 U.S. 316, 322 (2002). To withstand constitutional scrutiny, such a regulation must: (1) "be narrowly tailored to serve a significant governmental interest," *Forsyth County*, 505 U.S. at 130; (2) "leave open ample alternatives for communication," *id.*; and (3) contain "narrow, objective, and definite standards to guide the licensing authority," *id.* at 131 (quoting *Shuttlesworth*, 394 U.S. at 150-51). "To be narrowly tailored, an ordinance 'need not be the least restrictive or least intrusive means of' effectuating the relevant interests . . . but it may not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *City of Charleston*, 416 F.3d at 284 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 798, 799 (1989)).

## A.

We begin by addressing whether the various provisions of the Raleigh ordinances satisfy the narrow tailoring requirement.

1.

Green first attacks the notice requirement in both the original and amended ordinances as insufficiently tailored to further significant governmental interests. We have consistently recognized that a city has a "legitimate interest in maintaining the safety, order, and accessibility of its streets and sidewalks." *City of Charleston*, 416 F.3d at 284. The notice requirement clearly furthers this interest by permitting the Raleigh Police Department to allocate resources and assign officers to the site of a protest in order to protect the safety, order, and First Amendment rights of both demonstrators and bystanders. Thus, our inquiry is whether the notice requirement "burden[s] substantially more speech than is necessary to further" that legitimate interest. *Id.* (quoting *Ward*, 491 U.S. at 799).

It clearly does not. Unlike most picketing ordinances deemed unconstitutional, *see, e.g.*, *Forsyth County*, 505 U.S. at 130-33, *Shuttlesworth*, 394 U.S. at 150-51, *Niemotko v. Maryland*, 340 U.S. 268, 271-72 (1951), the City's notice requirement does *not* extend to municipal officials *any* discretion to grant, deny, or set conditions on permission to demonstrate. Designated City officials *must* grant a receipt of notice "immediately" to an individual notifying them he intends to picket; the official lacks *any* discretion to deny such a receipt. *See* § 12-1056(d) (2003); § 12-1056(d) (2006). Furthermore, demonstrators may notify City officials of an intent to picket at any time — in-person, by telephone, or by facsimile — without providing advance notice, undertaking a lengthy application process, or paying fees or other costs. Given these minimal impositions, we cannot hold that the notice requirement burdens substantially more speech than necessary to further the City's interest in protecting law enforcement officers, motorists, pedestrians, the picketers themselves, and those accessing businesses near the site of a demonstration. *See City of Charleston*, 416 F.3d at 284; *see also Ward*, 491 U.S. at 799, 801-02.

2.

Next, Green asserts that both the original and amended picketing ordinances are not narrowly tailored because by requiring would-be demonstrators to divulge their identities, the ordinances eliminate demonstrators' right to speak anonymously in public. *See* § 12-

1056(b)(1), (4), (6) (2003); § 12-1056(b)(1), (4), (6) (2006). Certainly, forced public revelation can discourage proponents of controversial viewpoints from speaking by exposing them to harassment or retaliation for the content of their speech. *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 197-201 (1999). Speech can also be chilled when an individual whose speech relies on anonymity is forced to reveal his identity as a pre-condition to expression. *See Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Village of Stratton*, 536 U.S. 150, 166-67 (2002); *see also Buckley*, 525 U.S. at 199.

However, the City ordinances mandate an extremely limited form of self-identification that occurs only when submitting the notice of intent to picket and not at the moment of actual speech. The original ordinances required picketers to identify the sponsoring group (if any), the person giving notice to the City, and the name of the person carrying the receipt of notice. The amended ordinances require disclosure of even less information — just the name of the person who will carry the receipt of notice. § 12-1056(b)(1), (4), (6) (2003); § 12-1056(b)(1), (4), (6) (2006).

These provisions are undoubtedly narrowly tailored to serve significant governmental interests. The amended disclosure requirement provides the City with a straightforward way to verify compliance with the notice requirement, which we have already held to be narrowly tailored. Without the name of the individual bearing the receipt, it might be difficult for a single police officer to confirm that a receipt has been issued; indeed, for larger groups, it might prove practically impossible to establish that *no one* present possesses the required receipt, in effect, rendering the notice requirement a nullity. Moreover, the additional disclosure requirements in the original ordinances satisfy similar practical exigencies in issuing and verifying the notice requirement. Knowing who has submitted notice could clearly aid the City in issuing the receipt, especially by mail or over the telephone; likewise, knowing the name of the organization permits police to approach the correct group when searching for the person bearing the receipt. The limited disclosure required here also furthers the City's significant interest in assuring financial accountability for damages caused by users of public property. *See Chi. Park Dist.*, 534 U.S. at 322.

Notably, both the original and amended ordinances significantly differ from the types of disclosure provisions invalidated by the Supreme Court. *See Buckley*, 525 U.S. at 198-99; *Village of Stratton*, 536 U.S. at 154-55, 164-69. Unlike those provisions, Raleigh's ordinances require neither "face-to-face" identification at the moment of public speech nor the identification of each individual engaged in speech. Furthermore, rather than simply furthering a general interest in crime and fraud prevention as those provisions did, the Raleigh ordinances are closely tied to the pragmatic necessities of regulating demonstrations on public thoroughfares.

The disclosure requirements at issue here impose a very modest burden on the prospective picketers' asserted right to remain anonymous and are narrowly tailored to serve Raleigh's significant governmental interests.

3.

Green also contends that the outermost sidewalk provision in the amended ordinance is not narrowly tailored. § 12-1057(d) (2006). But Chief Perlov testified, without contradiction, that the City instituted the outermost sidewalk requirement to prevent picketers from "block-[ing] the entrance to a building or people's egress into or out of the building." The Supreme Court has upheld a similar statute that prohibited picketing "in such a manner as to obstruct or unreasonably interfere with free ingress or egress to and from any public premises." *Cameron v. Johnson*, 390 U.S. 611, 612 n.1, 617 (1968). Such a provision imposes *no* burden on speech. As the *Johnson* Court explained, such a provision "does not abridge constitutional liberty," since obstructing pedestrian access to city or state facilities "bears no necessary relationship to the freedom to . . . distribute information or opinion." *Id.* at 617 (internal quotation marks omitted); *see also Cox v. Louisiana*, 379 U.S. 536, 554-55 (1965).

4.

Green further claims that the sign-size restrictions in the original and amended ordinances are insufficiently tailored to further a significant governmental interest. The original sign-size provision limited demonstrators to two-foot signs; the amended provision expands the

permissible size to three feet. § 12-1057(b) (2003); § 12-1057(b) (2006).

Green incorrectly asserts that the City has failed to demonstrate that the restrictions promote governmental interests in traffic and police safety. In fact, the record contains uncontroverted evidence regarding the traffic and safety interests supporting these restrictions, including the testimony of Chief Perlov and Bruce Friedman, a traffic engineer with thirty-three years experience. Mr. Friedman explained that sign-size limitations further safety objectives by reducing possible obstruction "of official traffic control devices (such as roadside signs and pedestal-mounted vehicular or pedestrian signal indications) that are necessary to regulate, warn, or guide road users within the public right-of-way." *See also Foti v. City of Menlo Park*, 146 F.3d 629, 641 (9th Cir. 1998) (upholding a three-foot sign restriction, holding that it was narrowly tailored to serve the city's legitimate governmental interest in traffic safety); *but see Edwards v. City of Coeur d'Alene*, 262 F.3d 856, 864 (9th Cir. 2001) (invalidating an ordinance that prohibited protestors from carrying signs affixed to any type of support, holding that the restriction was not narrowly tailored to the city's legitimate interest in safety when the city offered no empirical evidence supporting ordinance).[2] We find these justifications persuasive and conclude that the sign-size requirements do not substantially burden speech. *See Ward*, 491 U.S. at 799.

5.

Finally, Green challenges the small-group exception, asserting that it too is not narrowly tailored to further the City's significant interests. *See* §§ 12-1056(b), 12-1057(f) (2006).

---

[2]Nor are we convinced by Green's argument that the City's revision of the sign-size limitation to allow for slightly larger signs evinces a concession by the City that the original regulation violated the Constitution. Rather, we agree with the City that it must be given a "'reasonable opportunity to experiment with solutions,'" and the mere fact of experimentation alone does not render the amended ordinances constitutionally suspect. *See City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 439 (2002) (quoting *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 52 (1986)).

In *City of Charleston*, we noted the need for a small-group exception in an ordinance regulating "assemblies, parades, processions and exhibitions." 416 F.3d at 284-87, 288. We held that the *lack* of *any* such exception in a city ordinance rendered that ordinance facially unconstitutional because the city failed to establish the necessity for burdening expression by small groups of demonstrators. Our sister circuits have similarly held that picketing and demonstration regulations must include exceptions for small groups in order to be narrowly tailored. *See American-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 608 (6th Cir. 2005); *Grossman v. City of Portland*, 33 F.3d 1200, 1207-08 (9th Cir. 1994); *Cmty. for Creative Non-Violence v. Turner*, 893 F.2d 1387, 1392 (D.C. Cir. 1990); *see also Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1039-1043 (9th Cir. 2006).

Because the above cases concerned ordinances without *any* small-group exception, they provide little guidance on the question raised here — how *many* persons must a municipality exempt from the general picketing regulations to satisfy the narrow tailoring requirement. Indeed, in *City of Charleston* we declined "to announce a numerical floor below which a permit requirement cannot apply," finding that "[t]he relevant legislative body . . . is the proper forum for balancing the multitude of factors to be considered in determining how to keep the streets and sidewalks of a city safe, orderly, and accessible in a manner consistent with the First Amendment." 416 F.3d at 286. With these principles in mind, we consider the ordinances at issue here.

i.

With respect to the amended ordinances, the "relevant legislative body," the City, has determined that an exception for fewer than ten persons suffices and has proffered numerous governmental interests in support of this determination. The City has explained that, as the state capitol, Raleigh has historically been the site of public demonstrations despite being a comparatively small city. Often these demonstrations involve opposing groups that insist on simultaneously appearing on the same sidewalks in order to offer competing viewpoints to the public. The City must ensure that even during such demonstrations each set of protestors can exercise its First Amendment rights without impinging on the rights of others and that potentially

heated speech by rival groups does not go beyond mere words. During simultaneous uses of limited public space, the City must also ensure that protesters do not spill into the city streets and impede traffic or render it impossible for pedestrians to use the sidewalks or to enter or exit buildings. In order for the City to meet these objectives, a small-group exception must anticipate such overlapping uses of public space in a relatively confined area, thereby supporting a more modest numerical exception than might otherwise be the case. *See Chi. Park Dist.*, 534 U.S. at 322 (noting the legitimate governmental interest in ordinances designed "to coordinate multiple uses of limited space").

Moreover, as the City has emphasized, its ordinances regulate only sidewalks and other public ways, rather than parks or more capacious public fora designed to accommodate larger groups. *See City of Santa Monica*, 450 F.3d at 1042 (noting the distinct governmental interests implicated in "streets and sidewalks," in contrast to "public open spaces" like parks). Sidewalks and rights-of-ways are not only typically smaller and more narrow than parks, but groups of picketers also more easily disrupt the everyday use of sidewalks by pedestrians — for instance, forcing foot traffic into the streets if the sidewalk is blocked — while even moderately-sized groups in a park are unlikely to disrupt the activities of others.

Furthermore, any remaining reservations we might retain as to the size of the Raleigh small-group exception are allayed by the broader statutory context of the exception. As noted above, the City ordinances do not contain the additional restrictions present in most other municipal regulations of public demonstrations. For example, in *Douglas v. Brownell*, the Eighth Circuit noted in dicta that since the challenged ordinance required five days' advance notice and invested broad discretion with the Chief of Police, limiting the small-group exception to fewer than ten persons "compound[ed]" the court's concerns with other unconstitutional restrictions in the ordinance. 88 F.3d 1511, 1523-24 (8th Cir. 1996). In contrast, Raleigh ordinances do not contain unconstitutional restrictions that are "compound[ed]" by the small group exception. *Cf. City of Charleston*, 416 F.3d at 284-87, 288-90 (invalidating ordinance that contained *no* small group exception *and* required seventy-two hours advance notice and permitted city officials discretion to deny the application); *City of Dearborn*,

418 F.3d at 603, 608 (invalidating ordinance that contained *no* small group exception *and* required thirty days' advance notice and permitted City Council discretion to deny the application); *Grossman*, 33 F.3d at 1204-08 (invalidating ordinance that contained *no* small group exception *and* required seven days' advance notice and permitted officials discretion to deny application).

Given the City's well-considered justification for the size of the small group exception and the relatively slight burden imposed by Raleigh's ordinances as a whole, we believe the small-group exception complies with the narrow tailoring requirement.

ii.

Green also asserts that the failure of the original City ordinances to contain a small-group exception rendered them unconstitutional as applied to his group on August 23, 2003. Given our holding that Raleigh can constitutionally apply the amended picketing ordinances to groups of ten or more, however, we must similarly conclude that the City could constitutionally apply the original ordinances to Green's eleven to thirteen member group. Although the City has modified the original ordinances in a variety of ways, the most significant factors for purposes of this analysis are identical in the original and amended ordinances. The important governmental interests supporting the ordinances as well as the most critical aspects of the ordinances — the lack of any advance notice and the absence of any discretionary official authority — remain the same in the original and amended versions of the ordinances. Thus, the original ordinances were constitutionally applied to Green's group on August 23, 2003.[3]

---

[3]Although we hold that the original City ordinances were constitutionally *applied* to Green's group of eleven to thirteen people on August 23, 2003, we recognize that the original ordinances would almost certainly be deemed unconstitutional *on their face* for lack of any exception for small groups. However, as noted above, Green has abandoned this facial challenge by failing to assert it in his opening brief.

B.

We turn to Green's claims that the ordinances do not leave open ample alternatives for communication. *See Forsyth County*, 505 U.S. at 130. An ordinance will not fail for lack of adequate alternatives as long as it provides avenues for "the more general dissemination of a message." *Frisby v. Schultz*, 487 U.S. 474, 482-84 (1988) (upholding ban on picketing "directed at a single residence" where alternatives included "[g]eneral marching through residential neighborhoods, . . . walking a route in front of an entire block of houses," going door-to-door, distributing literature through the mails, or contacting residents by telephone).

Raleigh's ordinances certainly allow suitable alternative channels of communication. They do not require individuals or groups of fewer than ten to comply with either the notice or disclosure requirements. Members of such groups may engage in completely spontaneous and anonymous communication, including direct speech and leafletting. Furthermore, the outermost sidewalk, sign-size, and notice require-ments impose only modest restrictions on larger groups, still permit-ting them to disseminate their message. Green contends that the sign-size requirement precludes his ability to communicate effectively with certain automobile passengers. But such a difficulty does not in any serious way prevent "the more general dissemination" of Green's message. *Frisby*, 487 U.S. at 483. Although a given size restriction might be so extreme as to prohibit effective public speech, the Raleigh ordinances do not present such a situation.

C.

Finally, Green contends that the picketing ordinances do not con-tain "narrow, objective, and definite standards to guide the licensing authority." *See Forsyth County*, 505 U.S. at 131 (quoting *Shuttles-worth*, 394 U.S. at 150-51).

Of course, picketing regulations do not withstand constitutional scrutiny if they invest licensing officials with "virtually unbridled and absolute power" to deny permission to demonstrate publically, *see Shuttlesworth*, 394 U.S. at 150-51, or otherwise arbitrarily impose de facto burdens on public speech. But, as we have emphasized above,

Raleigh's ordinances do not do this. Rather, they set forth clear requirements regulating picketing and extend to City officials *no* discretion to prohibit picketing that complies with these requirements.

Relying on deposition testimony of various city officials providing slightly different understandings of the term "picketing," Green contends that this term provides no definitive standard. The Supreme Court, however, has explicitly rejected such a contention. *See Hill v. Colorado*, 530 U.S. 703, 721-22 (2000) (explaining, in part, that "[t]he regulation of . . . expressive activities," such as "picketing" or "demonstrating," is clear and, "by definition, does not cover social, random, or other everyday communications" and citing to Webster's Third New International Dictionary for the plain meaning of "demonstrate" and "picket"). The Court has declined to use such "hypertechnical theories as to what the statute covers" as a basis for holding a regulation unconstitutionally vague. *Id.* at 732-33. The operative terms in the ordinances at issue here are clear and do not confer an unconstitutional discretion on government officials.

Notably, Green fails to cite *any* example of arbitrary or discriminatory enforcement of the ordinances or interpretation of the term "picketing." Green's mere conjecture about potentially arbitrary or discriminatory enforcement scenarios dooms his claim. "[S]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Hill*, 530 U.S. at 733 (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960)). Discriminatory enforcement decisions "must be dealt with if and when a pattern of unlawful favoritism appears." *Chi. Park Dist.*, 534 U.S. at 325. Therefore, should the City begin to enforce its ordinances in a discriminatory manner, Green may challenge that enforcement. Until this occurs, however, Green has failed to demonstrate that the ordinances are unconstitutional.

## IV.

To summarize, we conclude that Green's challenges to Raleigh's picketing ordinances fail.[4] Accordingly, the judgment of the district court is

---

[4]Green also claims that the notice requirements violate his right to peaceable assembly. He relies heavily on *Thomas v. Collins*, 323 U.S.

*AFFIRMED*.

516 (1945), but that case concerned a *content-based* statute requiring labor union organizers to register with the state before soliciting members. The Supreme Court has recognized that the right to assemble in public places, including "streets, sidewalks, and parks," is "[s]ubject to the traditional time, place, and manner restrictions." *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 577-78 (1980). Therefore, for the same reasons Green's free speech challenges do not succeed, Green's peaceable assembly claim must also fail.

## APPENDIX

### *Raleigh, N.C., City Code §§ 12-1055 - 12-1057 (2003)*

### Sec. 12-1055. Picketing Defined

The terms picket, pickets and picketing as used herein are deemed to include "demonstrators," persons participating in vigils and any action primarily promoting or objecting to a policy upon those portions of the public ways not used primarily for vehicular parking and moving traffic and not constituting a parade.

### Sec. 12-1056. Picketing Permitted; Notice of Intent and Receipt Required.

Peaceful picketing shall be permitted in the City provided the same is done under the following conditions:

(a)  No picketing shall be conducted on the public ways of this City and no person shall participate in the same unless notice of intent to picket has been given to the Chief of Police or his designated representative, and unless a receipt of such notice has been issued.

(b)  Notice of intent to picket shall be given in writing and shall contain the following information.

    (1)  The name, if any, of the organization or group sponsoring or proposing to picket;

    (2)  The location or locations in the City where the pickets propose to assemble and demonstrate;

    (3)  The date or dates on which the picketing is to occur;

    (4)  The name of the person and organization giving notice of intent to picket;

    (5)  Whether or not persons below the age of eighteen (18) years are expected to participate; and

(6)    The person or persons to be in charge of the activity and who will accompany it and carry any receipt of notice at all times.

(c)    It is unlawful for any person to engage in picketing before or about the residence or dwelling of any individual.

(d)    Upon the giving of notice of intent to picket, properly completed as hereinabove set out, the designated officer shall immediately issue a receipt of notice. The receipt shall contain all information stated in the notice. Notice shall be given by the holder of a receipt of notice to the Chief of Police or his designated representative immediately upon the cessation of such picketing for a period of twenty-four (24) hours or more. Before resumption of picketing interrupted for any such period, a new notice shall be given and a new receipt issued.

## Sec. 12-1057. Standards of Conduct for Picketing Activities

(a)    Picketing shall be conducted only on portions of the public ways not used primarily for vehicular parking or moving traffic.

(b)    Pickets may carry written or printed placards or signs not exceeding twenty-four (24) inches promoting the objective for which picketing is done provided the words used would not tend to incite violence.

(c)    Pickets must, if marching, march in a single file, not abreast, and may not march closer than fifteen (15) Feet, except in passing one another. Pickets not marching shall remain at least fifteen (15) feet apart.

(d)    If pickets promoting different objectives, causes, actions or policies desire to use a sidewalk that is already used for picketing, the Chief of Police or his designated agents shall allot a number of pickets promoting each objective, to use such sidewalk, on an equitable basis, proportionate to the number of objectives being promoted.

(e)     Pickets shall be restricted to the use of the outermost half of the sidewalk or other public way nearest the street and shall not at any time nor in any way obstruct, interfere with, or block: persons entering or exiting from vehicles; persons crossing streets or otherwise using the public way; the entrance or exit to any building or access to property abutting the street or sidewalk; or pedestrian or vehicular traffic.

(f)     No person observing, engaging in, or assisting in picketing shall bring to or allow to remain in the immediate area of picketing any vicious animal.

(g)     It shall be unlawful for anyone to picket without filing a notice as required herein or without being issued a receipt of such notice.

(h)     The provisions of §§ 12-1055 through 12-1057 are mandatory and not merely directory, and failure to comply with the provisions of these sections is hereby declared to be unlawful and punishable as provided by law.

***Raleigh, N.C., City Code §§ 12-1055 - 12-1057 (2006)***

### Sec. 12-1055. Picketing Defined

The terms picket, pickets and picketing as used herein are deemed to include "demonstrators," persons participating in vigils and any action primarily promoting or objecting to a policy upon those portions of the public ways not used primarily for vehicular parking and moving traffic and not constituting a parade.

### Sec. 12-1056. Picketing Permitted; Notice of Intent and Receipt Required.

Peaceful picketing shall be permitted in the City provided the same is done under the following conditions:

(a)     No picketing shall be conducted on the public ways of this City and no person shall participate in the same unless notice of

intent to picket has been given to the Chief of Police or his designated representative, and unless a receipt of such notice has been issued.

(b)   A group of ten or more persons shall give notice of intent to picket in writing and the notice given shall contain the following information. A group of fewer than ten persons may give written notice of intent to picket but is not required to do so.

   (1)   The name, if any, of the organization or group sponsoring or proposing to picket unless the group indicates that it intends to picket anonymously, in which case no name is required;

   (2)   The location or locations in the City where the pickets propose to assemble and demonstrate;

(3)   The date or dates on which the picketing is to occur;

(4)   The name of the person and organization giving notice of intent to picket unless the person or organization indicates that it intends to picket anonymously, in which case no name is required;

(5)   Whether or not persons below the age of eighteen (18) years are expected to participate; and

(6)   The person or persons to be in charge of the activity and who will accompany it and carry any receipt of notice at all times.

(c)   It is unlawful for any person to engage in picketing before or about the residence or dwelling of any individual.

(d)   Upon the giving of notice of intent to picket, properly completed as hereinabove set out, the designated officer shall immediately issue a receipt of notice. The receipt shall contain all information stated in the notice. Notice shall be given by the holder of a receipt of notice to the Chief of Police or his designated representative immediately upon the cessation of such picketing for

a period of twenty-four (24) hours or more. Before resumption of picketing interrupted for any such period, a new notice shall be given and a new receipt issued.

### Sec. 12-1057. Standards of Conduct for Picketing Activities

(a) Picketing shall be conducted only on portions of the public ways not used primarily for vehicular parking or moving traffic.

(b) Pickets may carry written or printed placards or signs not exceeding thirty-six (36) inches provided the words used would not tend to incite violence.

(c) If pickets promoting different objectives, causes, actions or policies desire to use a sidewalk that is already used for picketing, the Chief of Police or the Chief's designated agents shall allot a number of pickets promoting each objective, to use such sidewalk, on an equitable basis, proportionate to the number of objectives being promoted.

(d) Pickets shall be restricted to the use of the outermost half of the sidewalk or other public way nearest the street and shall not at any time nor in any way obstruct, interfere with, or block: persons entering or exiting from vehicles; persons crossing streets or otherwise using the public way; the entrance or exit to any building or access to property abutting the street or sidewalk; or pedestrian or vehicular traffic.

(e) No person observing, engaging in, or assisting in picketing shall bring to or allow to remain in the immediate area of picketing any vicious animal.

(f) It shall be unlawful for a group of ten or more persons to picket without filing a notice as required herein.

(g) The provisions of §§ 12-1055 through 12-1057 are mandatory and not merely directory, and failure to comply with the provisions of these sections is hereby declared to be unlawful and punishable as provided by law.