In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1939

ERIC SMITH,

*Plaintiff-Appellant,*

*v.*

EXECUTIVE DIRECTOR OF THE INDIANA
WAR MEMORIALS COMMISSION, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:12-cv-1402-WTL-DML— **William T. Lawrence**, *Judge.*

ARGUED OCTOBER 28, 2013 — DECIDED FEBRUARY 4, 2014

Before POSNER, WILLIAMS, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* The Indiana War Memorials Commission supervises the Soldiers and Sailors Monument at Monument Circle in Indianapolis, as well as several other monuments in downtown Indianapolis. A Commission policy requires even small groups to obtain a permit before gathering on Commission properties. Plaintiff Eric Smith and his young son were expelled from Monument Circle for protesting a

proposed United Nations arms treaty without a permit. Smith claims here that the Commission's permit policy violates the First Amendment. He appeals from the district court's denial of his motion for a preliminary injunction against the policy's enforcement. The defendants say little about the merits but argue that his appeal is moot because the permit policy has changed since the district court denied the motion. We conclude, however, that the new policy retains the problematic features of the old, so Smith's appeal is not moot. Because we also conclude that Smith has met the requirements for obtaining a preliminary injunction, we reverse the judgment of the district court and remand the case with instructions to enter an appropriate preliminary injunction.

I.  *Factual and Procedural Background*

   A.  *Smith's Protest*

Smith feared in the summer of 2012 that the United States would sign the Arms Trade Treaty, a treaty that would require countries to monitor international sales of conventional arms and ensure that arms embargoes are enforced with the goal of preventing exported weapons from falling into the hands of terrorist groups or other abusers of human rights. See http://www.un.org/disarmament/ATT/ (visited Feb. 3, 2014) for a description of the treaty and its full text. The treaty has been criticized by some nations for eroding national sovereignty and by some private organizations for undermining individual rights to keep and bear arms. The U.S. has signed the treaty but has not yet ratified it. See http://disarmament.un.org/treaties/s/ unitedstatesofamerica (visited Feb. 3, 2014). Smith believes that the Arms Trade Treaty would violate the U.S. Constitution by

infringing the right to bear arms. To register his disapproval and raise awareness, he decided to organize a protest at Monument Circle, home to the Soldiers and Sailors Monument. The Circle is an outdoor state-run public property at the center of downtown Indianapolis.

Hoping to attract a like-minded crowd, Smith publicized the event with a printed flier. The flier warned of the impending "atrocious act" of signing the treaty—an act described as equivalent to "taking away the 2nd Amendment"—and urged readers to join their fellow citizens in opposition at Monument Circle on a Thursday and Friday in July. The flier exhorted readers to "stop being lambs" and ended with a quotation attributed to Adolf Hitler about the virtues of disarming the citizenry.

The flier failed to attract a single person to join Smith's protest. When Thursday came, he found himself on Monument Circle accompanied only by his son. The pair set up five small signs on the ground. Within minutes, a Commission employee approached and asked Smith whether he had an event permit. He did not. The employee told him to leave the property immediately, suggesting he move to a sidewalk on municipal rather than state property. Smith responded that the First Amendment protected his right to demonstrate at Monument Circle without a permit, but the employee was unmoved. Two Indiana State Police officers then approached and threatened to arrest Smith if he and his son did not depart. The Smiths reluctantly complied.

B.  *District Court Proceedings*

After his expulsion from Monument Circle, Smith filed this suit against the Commission's executive director and the officers who had ordered him to leave the Circle on pain of arrest. He contends that the Commission's permit policy violates the Free Speech Clause of the First Amendment, and he moved for a preliminary injunction against its enforcement.

At a hearing on Smith's motion and in an earlier deposition, Christina Gaither, the Commission's director of administration, testified about the then-unwritten permit policy. She explained that, to ensure orderly use of the premises, the policy required individuals or groups to obtain a permit if they wished to use a Commission property for a "specific purpose." Permit applications are reviewed by Commission employees, including Gaither. Pressing her on what she meant by "specific purpose," Smith's lawyer asked about some hypothetical situations, a line of questioning that exposed the policy's ill-defined contours. Gaither conceded that groups as large as twenty-five could gather together for lunch on the Circle without a permit. She was uncertain whether a group of twenty-five lunchgoers would be allowed to eat without a permit if they were wearing political t-shirts during the meal. Gaither also said that if a group gathers without a permit, it is offered an application to obtain a permit on the spot, and that no permit application had ever been denied. She could not explain, though, why this option was not offered to Smith during his July 2012 protest. Other areas of uncertainty in her testimony related to how the Commission calculates the proper fee for a permit and under what circumstances the applicant must also purchase insurance. Although a fee schedule exists,

Gaither testified, departures from the schedule are not uncommon. (Examples of past permits supported her on this point.) She also testified that the insurance requirement would apply even to small groups if the members did not already know each other. People who know each other, she said, are not likely to sue each other or the Commission.

To obtain a preliminary injunction, Smith needed to establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the "balance of equities" tips in his favor (i.e., denying an injunction poses a greater risk to Smith than granting an injunction poses to the Commission), and that issuing an injunction is in the public interest. *United States v. NCR Corp.*, 688 F.3d 833, 837 (7th Cir. 2012). Because unconstitutional restrictions on speech are generally understood not to be in the public interest and to inflict irreparable harm that exceeds any harm an injunction would cause, see *ACLU of Illinois v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012), Smith's main obstacle to obtaining a preliminary injunction was demonstrating a likelihood of success on the merits.

In his motion and supporting brief in the district court, Smith explained why his First Amendment challenge to the Commission's permit policy would likely succeed. Monument Circle—where he had attempted to protest and hoped to protest in the future, both alone and in small groups—is indisputably a "traditional public forum." The government can restrict the time, place, and manner of expression in a traditional public forum, but only if the restrictions (1) are content-neutral, (2) are narrowly tailored to serve a significant government interest, and (3) leave open ample alternative channels of

communication. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).

Smith recognized that the restriction on speech in a public forum need not be the narrowest possible, but he argued that requiring a permit for small groups of demonstrators is not narrowly tailored to serve a significant government interest when, for example, larger groups of people having lunch at Monument Circle do not need a permit. He also explained that the permit requirement is not content-neutral because the policy allows "unbridled discretion" to the decision makers, inviting discrimination. See *Southworth v. Board of Regents of the University of Wisconsin System*, 307 F.3d 566, 578–79 (7th Cir. 2002). Finally, Smith argued for good measure that the permit requirement is overbroad, a doctrine of First Amendment law that permits facial challenges when a regulation of speech is so broad that it prohibits a substantial amount of protected speech. See *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 129–30 (1992). (An overbreadth challenge can be brought even when the plaintiff's expressive act legitimately could be restricted by a narrower regulation. *Id.* at 129.) The defendants defended the policy in the district court as necessary to maintain order and to hold people accountable for any damage to Commission property during an event.

The district court denied Smith's motion on the ground that he had not demonstrated a reasonable likelihood of success on the merits. The court recognized that Monument Circle is a traditional public forum and that aspects of the permit policy appear to be constitutionally problematic. But the court stated repeatedly and rather opaquely that Smith had "failed to sufficiently articulate his challenge" to that policy.

II. *Analysis*

  A. *Mootness*

On appeal the defendants do not attempt to defend the district court's order denying Smith's motion for a preliminary injunction. They argue instead that Smith's appeal is moot because the Commission has changed its permit policy since the district court ruled. When the district court ruled, the Commission's permit policy was unwritten and required a permit if someone wanted to use a space for a "specific purpose." The new policy can now be found (by those who know they should look) on the permit application itself, titled the "Indiana War Memorial Commission Facility Use Application and Agreement." The new application, which can be downloaded from the bottom of the "Events & Facility Rentals" webpage, http://www.in.gov/iwm/2343.htm (visited Feb. 3, 2014), begins:

> **<u>Submission of the Facility Use Agreement is STRONGLY suggested for all events & gatherings.</u>**
> Generally, small gatherings of less than 15 people are permitted informal use of the outdoor spaces without submission of the FUA.

The application goes on to explain that even groups of fewer than fifteen people must obtain a permit under a number of circumstances, including if the event is advertised, the public is invited, and/or the event lasts longer than five hours. *Id.* It is unclear whether these and the other listed triggers of the permit requirement (e.g., using glitter at an event) are exhaustive. We also do not know whether Smith's prior use of Monument Circle might have qualified as "informal." As will

be seen, those questions might be relevant to the ultimate outcome of this case but need not concern us at this stage.

According to the defendants, Smith's appeal from the denial of a preliminary injunction is moot because the new written policy would not require him to obtain a permit for the small-group protests he plans to organize. Smith counters that his appeal is not moot because the revised policy retains the unconstitutional components of the old policy. (The defendants concede that Smith's case is not moot in the district court because he is still pursuing damages claims against individual defendants for violating his First Amendment rights by expelling him from Monument Circle in July 2012.)

When a challenged policy is repealed or amended mid-lawsuit—a "recurring problem when injunctive relief is sought"—the case is not moot if a substantially similar policy has been instituted or is likely to be instituted. *ADT Security Services, Inc. v. Lisle-Woodridge Fire Protection Dist.*, 724 F.3d 854, 864 (7th Cir. 2013) (concluding that a local government's amendment of challenged ordinance did not resolve the dispute between the government and regulated businesses). Challenges based on the First Amendment are no exception. An appeal like this one will be deemed moot if the challenged policy restricting speech is removed before the court of appeals can evaluate it, but if the policy change does not actually correct the asserted constitutional problem, the appeal is not moot and should go forward. Compare *Benkendorf v. Village of Hazel Crest*, 804 F.2d 99, 101 (7th Cir. 1986) (amendment exempting plaintiff's activities from ordinance rendered appeal moot), with *Green v. City of Raleigh*, 523 F.3d 293, 299–300 (4th Cir. 2008) (appeal not moot because amended policy was

substantially similar to old); see also *Lamar Advertising of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 378 (2d Cir. 2004) (explaining that a "plaintiff's claims will not be found moot where the defendant's amendments are merely superficial or the law, after amendment, suffers from similar infirmities as it did at the outset"). The question ultimately calls for a judgment about whether the changes are so substantial as to make it unwise for the appellate court to consider the new policy.

For three reasons, we agree with Smith that this appeal is not moot. First, although the amended policy has an exception for groups smaller than fifteen, it also contains so many exceptions to that exception that it still requires permits for many smaller events, including events like Smith's July 2012 protest of the arms treaty and others he is likely to organize in the future. For example, the ban on demonstrating without a permit after advertising or inviting the public would have applied to his arms treaty protest and would continue to apply to Smith. He has invited the public and hopes to do so again, even though he might never attract more than a few people. The five-hour time limit also has the potential to interfere with Smith's planned demonstrations. Second, the amended policy applies to any demonstration made up of fifteen people or more. Smith's position is that even a group of fifteen or at least a few more is small enough that it must be allowed to gather in Monument Circle for First Amendment expressive purposes without a permit. Finally, Smith's appeal is not moot because the broad discretion exercised by the Commission staff who review permit applications and decide whether to charge a fee or require insurance seems to have remained intact under the amended policy.

These circumstances distinguish Smith's case from *Benkendorf*, where the new policy completely removed the restriction on speech that the plaintiff had challenged, a ban on certain realtor advertisements. 804 F.2d at 100–01. Smith's situation is much closer to *Green v. City of Raleigh*, where the plaintiff challenged a permit requirement for picketers. While Green's appeal was pending, the permit policy was amended to exempt groups of fewer than ten and to decrease the amount of information the permit applicant had to supply. 523 F.3d at 298. The new policy, the Fourth Circuit concluded, was similar enough to the old that "'it is permissible to say that the challenged conduct continues.'" *Id.* at 300, quoting *Northeastern Fla. Chapter of Associated Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 662 n.3 (1993).

B.  *The Merits*

Since Smith's appeal is not moot, we move to the merits of his motion for a preliminary injunction. As we indicated above, the only real question in this case, as is often true in the First Amendment context, is whether Smith has shown a reasonable likelihood of succeeding at trial. See *ACLU of Illinois v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012), among many similar cases.

Monument Circle, all agree, is a traditional public forum like a park or sidewalk. In these places where free speech has long been allowed, regulations that restrict speech do not comport with the First Amendment unless they are (1) content-neutral, (2) narrowly tailored to serve a significant government interest, and (3) leave open ample alternative channels of communication. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). We conclude that Smith has

indeed shown, with fully developed and amply supported arguments, a reasonable likelihood of success on the merits of his claim.

To begin, the Commission's permit policy seems not to be narrowly tailored to serve a significant government interest. A regulation "need not be the least restrictive or least intrusive means" of furthering the government's interest (in this case the orderly use of its property), but at the same time the government "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Ward v. Rock Against Racism*, 491 U.S. 781, 798–99 (1989). Requirements that small groups obtain a permit to gather in a traditional public forum frequently fail the narrow-tailoring requirement. See *Marcavage v. City of Chicago*, 659 F.3d 626, 635 & n.9 (7th Cir. 2011) (collecting cases); cf. *Thomas v. Chicago Park Dist.*, 534 U.S. 316 (2002) (upholding permit requirement for gatherings of fifty people or more in public forums in Chicago). Whether a numerical limit on gathering without a permit is constitutional depends on the specifics of the space at issue because different spaces can accommodate groups of different sizes without interfering with orderly, fair use of the space. *Marcavage*, 659 F.3d at 635. The district court may eventually have to decide just how large a group the Commission must allow on its various properties without requiring a permit, but at this stage, considering the size and layout of the space and the fact that groups of twenty-five may gather without a permit at Monument Circle to eat lunch, at least, Smith seems likely to succeed in showing that the fourteen-person limit on demonstrations without a permit is not narrowly tailored.

Another aspect of the permit policy that likely is not narrowly tailored is its provision that, if a gathering has been advertised or the public has been invited, a permit is required even if the group ultimately is made up of fewer than fifteen people. While a group without a permit could be expelled from the Circle if it grew too large—just as a group with a permit might be expelled if its numbers grow beyond what the permit approved—to disallow a protest attended by fewer than fifteen people simply because the public was invited and no permit was obtained likely goes too far in restricting speech. Similarly, the five-hour time limit on being at a Commission property without a permit may be too restrictive, particularly as it appears to apply to lone individuals as well as to small groups.

Smith also is likely to succeed in showing that the permit policy fails the requirement of content neutrality. To qualify as content-neutral, a permit policy cannot invest "unbridled discretion" in the person who decides whether a permit will issue because excessive discretion can lead to discriminatory enforcement. *Thomas*, 534 U.S. at 323; *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130–33 (1992); *Southworth v. Board of Regents of the University of Wisconsin System*, 307 F.3d 566, 578–79 (7th Cir. 2002). The Commission represents that it has never denied a permit application, suggesting that its decision makers are not exercising discretion at all. That is not a satisfactory response in this case. Although the Commission may not have denied a permit application (which may actually tend more to indicate that the permit requirement is an unnecessary restraint on speech), the evidence thus far indicates that Commission employees use unguided discretion to choose whether a group that did not obtain a permit ahead

of time will be allowed to obtain one on the spot. Smith was given no such option, though Gaither testified that the option is routinely offered. And whether a fee is imposed at all, whether a fee should be large or small, and whether insurance should be required all seem to be discretionary decisions without reasonable policy guidance. Under the Supreme Court's cases dealing with similar permitting requirements, such a system invites abuse and is not content-neutral.

Because Smith has made the necessary showing to obtain a preliminary injunction, the decision of the district court must be reversed. We leave it to the court on remand to determine the proper scope of the injunction, including whether it should extend beyond Monument Circle to other properties the Commission administers. As we have explained, the number of people who must be allowed to gather without a permit may depend on the specifics of the space in question. We decide here only that Smith appears likely to prove at trial that fifteen is too small a number to trigger a permit requirement for Monument Circle and that he has met the other requirements for preliminary injunctive relief. In its order denying Smith's motion, the district court expressed uncertainty over whether Smith was seeking an injunction that would protect only his right to protest or was seeking an injunction based on a facial challenge that would bind the Commission with respect to everyone. Because Smith has a reasonable likelihood of showing that the policy is unconstitutional both as it was applied to him and as it applies to individuals and small groups generally, the preliminary injunction should prohibit its enforcement against any individual or small group.

The decision of the district court denying a preliminary injunction is REVERSED and the case is REMANDED with instructions to enter an appropriate preliminary injunction consistent with this opinion.